UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-5040 AHM (RCx) | Date | October 10, 2007 |
|---|---|---|---|

| Title | HERBALIFE INTERNATIONAL, INC. v. LUMENE NORTH AMERICA LLC *et al* |

Present: The Honorable   A. HOWARD MATZ, U.S. DISTRICT JUDGE

| Stephen Montes | Not Reported | |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys **NOT** Present for Plaintiffs:          Attorneys **NOT** Present for Defendants:

**Proceedings:**          IN CHAMBERS (No Proceedings Held)

## I.   INTRODUCTION

This is a trademark case between two companies that use the same phrase, "Radiant C," on skin care products. Herbalife International, Inc. ("Herbalife") has been selling "Radiant C" products since 2000 and owns two registered trademarks for "Radiant C." Lumene North America, LLC ("Lumene"), a subsidiary of a Finnish company, has been selling skin care products with "Radiant C" on the packaging in the U.S. since 2005. On August 2, 2007, Herbalife sued Lumene for trademark infringement and unfair competition under the Lanham Act (15 U.S.C. §§ 1114 and 1125), and related state law claims. On September 7, 2007, Herbalife filed this motion, asking the Court to preliminary enjoin Lumene from any use of the term "Radiant C" and any distribution of skin care products in the U.S. bearing the term "Radiant C." Lumene then sought an order postponing the hearing date and authorizing limited expedited discovery. The Court permitted a postponement of the hearing, ordered depositions of each party's declarants on an expedited schedule, and granted the opportunity to file supplemental papers.

Having reviewed the parties' submissions and for the following reasons, the Court DENIES the motion.

## II.   FACTUAL BACKGROUND[1]

---

[1] Herbalife has filed a Request for Judicial Notice of Website Printouts with its motion. The Court takes judicial notice of the printouts therein.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-5040 AHM (RCx) | Date | October 10, 2007 |
|---|---|---|---|
| Title | HERBALIFE INTERNATIONAL, INC. v. LUMENE NORTH AMERICA LLC *et al* | | |

## A.    The Parties

Herbalife manufactures and sells weight loss, nutritional, and personal care products. Mot., Declaration of Jonathan Liss ¶ 2. Its products are sold to consumers through a direct-sales network of more than 1.6 million distributors in more than 64 countries. *Id.* ¶ 3. On its website, Herbalife describes itself as "a premier nutrition and weight-management company." Opp'n, Declaration of Joanna A. Diakos ("Diakos Decl.") ¶ 3, Ex. A.

Lumene is a wholly-owned subsidiary of Lumene Oy, based in Espoo, Finland. Opp'n, Declaration of Joe Pastorkovich ("Pastorkovich Decl.") ¶ 2. Lumene Oy produces and sells skin care and cosmetic products in Finland, other European countries, and North America. *Id.* ¶ 2. According to Lumene Oy's website, the North American subsidiary, Defendant Lumene, was established in February 2006. Mot., Declaration of Valerie E. Alter ("Alter Decl.") ¶ 8, Ex. E.

## B.    The Parties' Use of RADIANT C on Their Products[2]

Herbalife has a line of skin products called "Radiant C." Its "Radiant C" line has four products:

(1) Radiant C Body Lotion SPF 15 [Mot., Exhibit 1];
(2) Radiant C Face Quencher [Mot., Exhibit 2];
(3) Radiant C Daily Facial Scrub Cleanser [Mot., Exhibit 3]; and
(4) Radiant C Daily Skin Booster [Mot., Exhibit 4].

Herbalife launched its Radiant C line in 2000, and has since sold 1.2 million units, amounting to more than $17.4 million in revenue. Mot., Declaration of Michael Gilman ("Gilman Decl.") ¶ 3.

Herbalife filed a federal registration application for its RADIANT C design mark on July 3, 2000; the design mark was published for opposition on May 21, 2002 and registered on February 15, 2005. Mot., Exs. D, R. The design mark consists of the word

---

[2]Although in the Herbalife mark in question, only the letters "R" and "C" are capitalized, the Court will use RADIANT C (all caps) to refer to Herbalife's trademark.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-5040 AHM (RCx) | Date | October 10, 2007 |
|---|---|---|---|
| Title | HERBALIFE INTERNATIONAL, INC. v. LUMENE NORTH AMERICA LLC *et al* | | |

"Radiant" in black letters, on top of which is overlaid a larger, orange-colored letter C. It is attached as Exhibit A to this order. On April 29, 2005, Herbalife filed an application to register the RADIANT C standard character mark. Mot., Exs. D, R. It was published for opposition on March 14, 2006 and registered June 6, 2006. *Id.* According to both of these registrations, the first use in commerce of the RADIANT C word mark was September 18, 2000. *Id.* Herbalife's product packaging for all four products bears the trademarked design mark and features an orange color scheme. The products also have the "Herbalife" housemark in capital letters running vertically along the package. Two of the products (the Face Quencher and Daily Skin Booster) have exterior cardboard packaging, while the other two products are simply in bottle form without extra packaging.

Lumene sells a line of products called "Vitamin+," launched in 2001 in Finland. Opp'n, Declaration of Olli Vähänen ("Vähänen Decl.") ¶ 6.[3] Lumene touts its Vitamin+ line as a "revolutionary, new line of high-quality skincare products...formulated to provide 'age-defying' radiance to the skin." *Id.*[4] Within its Vitamin+ line are five products bearing the term "Radiant C:"

(1) Radiant C-Energy 5 Min. Mask [Mot., Exhibit 8];
(2) Radiant C-Energy Eye Serum [Mot., Exhibit 9];
(3) Radiant C-Energy Age-Defying Intensive Care [Mot., Exhibit 6];
(4) Radiant C-Energy Age-Defying Day Cream SPF 15 [Mot., Exhibit 7]; and
(5) Radiant C Beauty Drops [Mot., Exhibit 5].[5]

According to Lumene Oy's Vice President of Marketing, Olli Vähänen, a Lumene employee named Päivi Paltola conceived of the term "Radiant C-Energy" in 2003, but

---

[3]The Court overrules Herbalife's objection to Vähänen's statement that Lumene Vitamin+ line was launched in April 2001 in Finland. This fact is independently verifiable.

[4]The Court overrules Herbalife's objection to this portion of Vähänen's declaration; although it is argumentative, the hyperbole merely goes to its weight.

[5]The name of this product is unclear.  The box states "Radiant C Beauty Drops."  The jar containing the product, visible from a cut-out on the box, states "Radiant C-Energy Drops."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No: | CV 07-5040 AHM (RCx) | Date | October 10, 2007 |
|---|---|---|---|
| Title | HERBALIFE INTERNATIONAL, INC. v. LUMENE NORTH AMERICA LLC *et al* | | |

without awareness of Herbalife's products. Vähänen Decl. ¶ 9.[6]  In October 2004, the first Vitamin+ Radiant C-Energy products were shipped to Nordic and Eastern European countries. Vähänen Decl. ¶ 9. The first Vitamin+ Radiant C-Energy products were shipped to the U.S. in December 2004 and available for purchase at retail by March 2005. Vähänen Decl. ¶ 10; Pastorkovich Decl. ¶ 7.[7] Each of the "Radiant C-Energy" products is packaged within a cardboard box and uses an orange and blue color scheme. The "Lumene" housemark is on the exterior packaging; it is vertically oriented on the first four products, and horizontal on the fifth.

## III. LEGAL STANDARD

In order to obtain a preliminary injunction in a trademark case, a plaintiff must demonstrate either: (1) a probability of success on the merits and the possibility of irreparable injury; or (2) the existence of serious questions going to the merits and a balance of hardships that tips sharply in its favor. *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1205-06 (9th Cir. 2000). "This analysis creates a continuum: the less certain the district court is of the likelihood of success on the merits, the more plaintiffs must convince the district court that the public interest and balance of hardships tip in their favor." *Southwest Voter Reg. Educ. Project v. Shelley*, 344 F.3d 914, 918 (9th Cir. 2003).

In trademark infringement cases, if the plaintiff demonstrates a likelihood of success on the merits (by showing a likelihood of confusion), the Court will presume irreparable injury because trademark damages are, by their very nature, irreparable. *Brookfield Communications, Inc. v. West Coast Entm't Corp.*, 174 F.3d 1036, 1066 (9th Cir. 1999). "This presumption effectively conflates the dual inquiries of this prong into the single question of whether the plaintiff has shown a likelihood of success on the

---

[6]The Court overrules Herbalife's objection to this paragraph, because Vähänen is a percipient witness to the conversation between himself and Paltola. Absent any indication of the unavailability of Paltola, however, Court attaches little weight to any assertion that what Paltola said is true. The Court sustains Herbalife's objection to Vähänen Decl. ¶ 8; because of his lack of personal knowledge, it lacks foundation.

[7]The Court overrules Herbalife's objection to Pastorkovich Decl. ¶ 7. Pastorkovich is testifying to easily verifiable events that any manager in his position could be expected to know even though he was not working there at the time.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

|  Case No. | CV 07-5040 AHM (RCx) | Date | October 10, 2007 |
|---|---|---|---|
| Title | HERBALIFE INTERNATIONAL, INC. v. LUMENE NORTH AMERICA LLC *et al* | | |

merits." *GoTo.com*, 202 F.3d at 1205 n.4.

## IV. ANALYSIS

### A.   Probability of Success on the Merits: Likelihood of Confusion

To establish trademark infringement, Herbalife must demonstrate that Lumene is using a mark confusingly similar to Herbalife's valid and protectable mark. *Brookfield*, 174 F.3d at 1046.   For the purposes of this motion, the parties do not dispute that Herbalife's Radiant C marks are valid and protectable.  Hence, the sole  inquiry is likelihood of confusion.

Courts in the Ninth Circuit consider the eight factors in *AMF Inc. v. Sleekcraft Boats* to analyze the likelihood of confusion in trademark infringement cases. *Brookfield Comm., Inc. v. West Coast Ent. Corp., Inc.*, 174 F.3d 1036, 1053-54 (9th Cir. 1999) (citing *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979)).  Here, the eight factors (which are not necessarily the exclusive factors for determining infringement *vel non*) are: (1) the strength of Herbalife's marks; (2) the proximity of the goods; (3) the similarity of the marks; (4) evidence of actual confusion; (5) the marketing channels used; (6) the type of goods and the degree of care likely to be exercised by the purchaser; (7) Lumene's intent in selecting the mark; and (8) the likelihood of expansion of the product lines. *Id.*

#### 1. Sleekcraft factor #1: Strength of the marks.

##### a. Conceptual strength

The strength of a verbal mark such as RADIANT C is usually conceptualized along a continuum of increasing inherent distinctiveness. *GoTo.com*, 202 F.3d at 1207 (citing *Brookfield*, 174 F.3d at 1058)).  From weakest to strongest, marks are categorized as generic, descriptive, suggestive, arbitrary or fanciful. *Id.*  Federal registration constitutes *prima facie* evidence that the mark is not generic. *Miss World (UK) Ltd. V. Mrs. America Pageants, Inc.*, 856 F.2d 1445, 1448 (9th Cir. 1988).  The parties dispute only whether RADIANT C is descriptive, as Lumene argues, or suggestive, as Herbalife argues.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No: | CV 07-5040 AHM (RCx) | Date | October 10, 2007 |
|---|---|---|---|
| Title | HERBALIFE INTERNATIONAL, INC. v. LUMENE NORTH AMERICA LLC *et al* | | |

Descriptive terms are not inherently distinctive and confer trademark rights only upon a showing of secondary meaning, while suggestive terms are inherently distinctive trademarks even without a showing of secondary meaning. *Japan Telecom, Inc. v. Japan Telecom America Inc.*, 287 F.3d 866, 872 (9th Cir. 2002). A descriptive mark "define[s] qualities or characteristics of a product in a straightforward way that requires no exercise of the imagination to be understood." *Kendall-Jackson Winery, Ltd. v. E. & J. Gallo Winery*, 150 F.3d 1042, 1047, n. 8 (9th Cir. 1998). Because the message conveyed by a descriptive mark is "direct and clear," competitive sellers are likely to need to use the term in describing or advertising their goods. *Rodeo Collection, Ltd. v. West Seventh*, 812 F.2d 1215, 1218 (9th Cir. 1987) (citation omitted). In contrast, a suggestive mark "conveys an impression of a good but requires the exercise of some imagination and perception to reach a conclusion as to the product's nature." *Brookfield*, 174 F.3d at 1058, n. 19 (using "Roach Motel" insect traps as an example). A suggestive term conveys a message "so remote and subtle that it is really not likely to be needed by competitive sellers. . . ." *Rodeo Collection*, 812 F.2d at 1218.

Although considered distinctive, a suggestive mark is nonetheless a presumptively weak mark that is "entitled to a restricted range of protection." *Sleekcraft*, 599 F.2d at 350; *see also Brookfield*, 174 F.3d at 1058 (noting that "unlike arbitrary or fanciful marks, which are typically strong, suggestive marks are presumptively weak."). However, commercial success can transform a suggestive mark into a strong mark. *See, e.g., Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1144 (9th Cir. 2002); *Brookfield*, 174 F.3d at 1058.

Herbalife argues that RADIANT C, properly seen as a composite mark, is a suggestive mark because it takes some imagination to associate the term with the qualities and attributes of the product. Herbalife contends that the term indirectly suggests "radiancy," noting that RADIANT C pronounced as one word sounds like "radiancy." The term also indirectly suggests vitamin C, one of the ingredients, according to Herbalife. Lumene argues that RADIANT C is merely descriptive because "RADIANT" describes the intended effect of the product and "C" is an ingredient.

The Court agrees with Herbalife that when applied to skin care products, RADIANT C clearly appears to be suggestive rather than descriptive, because "a consumer must use more than a small amount of imagination to make the association" between RADIANT C and its various possible meanings. *Rodeo Collection*, 812 F.2d at

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-5040 AHM (RCx) | Date | October 10, 2007 |
|---|---|---|---|
| Title | HERBALIFE INTERNATIONAL, INC. v. LUMENE NORTH AMERICA LLC *et al* | | |

1218. The mark does not directly describe the attributes of the skin care products, but rather invites an impression of the beneficial effects and ingredients of the product. Indeed, RADIANT C has multiple connotations. Consumers may comprehend, based on the mark and all the other words on the packaging, that the product is intended to make one's skin radiant. Consumers may also perceive that the design mark, with the orange "C" overlay, along with the orange plant logo on the packaging, is evocative of citrus fruits. Finally, consumers may, with a spark of imagination, see that "Radiant C" pronounced together sounds like "radiancy." Whatever the connotation of "Radiant C," it requires some effort of imagination and perception. *See Glow Industries, Inc. v. Lopez*, 252 F. Supp. 2d 962, 980 (C.D. Cal. 2002) ("GLOW" is on the whole suggestive rather than descriptive as used in connection with shower gel and body lotion, because "some amount of association is required to link the concept of glowing skin to use of a particular gel or lotion."); *Sara Lee Corp. v. Kayser-Roth Corp.*, 81 F.3d 455, 465 (4th Cir. 1996) (L'EGGS "conjures favorable images of attractive legs or legginess and, by subtly reminding consumers of its famous egg packaging design, reinforces the association between the product and its source."); *Giorgio Beverly Hills, Inc. v. Revlon Consumer Products Corp.*, 869 F.Supp. 176, 180 (S.D.N.Y. 1994) ("The mark 'Red' invites the consumer to employ a bit of perception, thought, and imagination, to reach the conclusion that Giorgio's fragrance is romantic, passionate, and sexy, and/or that the consumer will elicit the corresponding emotions from others when wearing the fragrance"); *Elizabeth Taylor Cosmetics Co. v. Annick Goutal, S.A.R.L.*, 673 F.Supp. 1238, 1243-44 (S.D.N.Y. 1987) ("Although the word 'passion' may be used frequently in fragrance advertising copy, it is not a descriptive term. Instead of describing the product, it describes an emotion the fragrance seeks to induce. Connecting the emotion to the fragrance requires 'an effort of the imagination'"); *Patou, Inc. v. Jacqueline Cochran, Inc.*, 201 F.Supp. 861, 864 (S.D.N.Y. 1962) ("There are two extremes in the choice of a mark. A product may have a fanciful name, or at the other extreme, a name which is primarily descriptive. In between there exists a large middle ground of names, which while providing some description of the product, nevertheless demand an effort of the imagination to be understood as descriptive. These names must be taken in a suggestive or figurative sense. Joy [, as used for perfume,] stands in this middle ground").

### b. Commercial strength

The commercial strength of a mark refers to its degree of recognition in the minds

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-5040 AHM (RCx) | Date | October 10, 2007 |
|---|---|---|---|
| Title | HERBALIFE INTERNATIONAL, INC. v. LUMENE NORTH AMERICA LLC *et al* | | |

of the relevant customer class, and it is measured by advertising expenditures, length of exclusive use, and other indicia of actual marketplace recognition. *See Entrepreneur Media*, 270 F.3d at 1144; *Moose Creek, Inc. v. Abercrombie & Fitch Co.,* 331 F.Supp.2d 1214, 1224 (C.D. Cal. 2004). When there is widespread consumer recognition of a mark, there is an increased likelihood that consumers associate that mark with its promoter, and therefore an increased likelihood of confusion if another user of the mark is in fact not related to the first.

Herbalife argues that RADIANT C is commercially strong due to Herbalife's extensive commercial use of the mark since 2000. As evidence of such use, Herbalife asserts that it has sold 1.2 million units of "Radiant C" products since 2000, amounting to $17.4 in revenue. Gilman Decl. ¶ 3. According to Herbalife, the "Radiant C" line is within Herbalife's top ten skin care products in worldwide sales. Reply, Ex. I, Gilman Dep. 56:3-10; Ex. J, Carter Dep. 41:18-24, 50:1-22.

Herbalife has provided evidence that it has distributed Radiant C promotional items (such as flyers, brochures, hats, chairs, pens, posters) at product launch events and training events that distributors and other invited guests attend. Reply, Ex. J, Carter Dep. 10:4-8, 11:20-23; Ex. L (photos of these items). Although those events are focused on Herbalife's distributors, distributors themselves sometimes bring customers to these events to learn about the products. Reply, Ex. J, Carter Dep. 16:18-24. According to Mr. Liss, who worked on the initial launch of the "Radiant C" line in 2000, Herbalife used Internet advertising, literature, product catalogs, flyers, brochures, and "pass-along direct mail" to promote its new line. Supplemental Declaration of Joanna A. Diakos ("Supp. Diakos Decl.", Ex. A, Liss Dep. 76: 8-24. Herbalife's independent distributors also engage in their own advertising and promotion using the mark, including on their own websites.

Although Herbalife lists the types of advertising it does, it has not provided evidence of the amount of advertising expenditures. Herbalife also does not state how many training and launch events it has held and how many people (distributors and/or customers) attended. Moreover, other competitors also use the word "radiant" or a variant on their products.[8] Although these uses of "radiant" could conceivably make it

---

[8]Examples of skin care products that use the word "radiant" or a variant abound: Aveeno Positively Radiant Cleanser, Sally Hansen Treatment Radiant Hand Cream, Neutrogena Radiance Boost

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-5040 AHM (RCx) | Date | October 10, 2007 |
|---|---|---|---|
| Title | HERBALIFE INTERNATIONAL, INC. v. LUMENE NORTH AMERICA LLC *et al* | | |

less likely that consumers would associate RADIANT C only with Herbalife products, "radiant" is not the same as "Radiant C," which only Lumene among Herbalife's competitors uses. On balance, Herbalife's evidence of continuous its promotion efforts, its broad distributor network, its sales figures for its "Radiant C" product line, and its exclusive use of the mark for five years is sufficient to demonstrate a likelihood of proving that its mark is commercially strong. *Cf. M2 Software, Inc. v. M2 Communications, L.L.C.*, 281 F. Supp. 2d 1166, 1171 (C.D. Cal. 2003) (finding that plaintiff's mark was commercially weak where plaintiff had only a few magazine advertisements and feeble sales dating five years back), *aff'd M2 Software, Inc. v. Madacy Entertainment*, 421 F.3d 1073, 1081 (9th Cir. 2005). *But see Brookfield*, 174 F.3d at 1058 (on review of denial of preliminary injunction, holding that plaintiff did not establish commercial strength of its mark where plaintiff argued that it used the mark for over five years, owned federal and state registrations, and spent $100,000 advertising its mark).

Herbalife has shown that it is likely to succeed in showing that RADIANT C is suggestive as applied to skin care products and that it has achieved marketplace recognition. Considering the overall strength of the mark, the Court finds that its commercial strength largely offsets its conceptual weakness. This factor weighs slightly in favor of Herbalife.

2. Sleekcraft factor #2: The proximity or relatedness of the goods.

Related goods are those "products which would be reasonably thought by the buying public to come from the same source if sold under the same mark." *Sleekcraft*, 599 F.2d at 348 n. 10. In determining whether goods are related, courts consider whether the goods are: (1) complementary; (2) sold to the same class of purchasers; and (3) similar in use or function. *Matrix Motor Co., Inc. v. Toyota Jidosha Kabushiki Kaisha*, 290 F. Supp. 2d 1083, 1092 (C.D. Cal. 2003).

Lumene does not dispute that this factor favors Herbalife. The parties' Radiant C skin care products are clearly proximate. Both sets of products include lotions with SPF 15 (Herbalife #3 and Lumene #4) and anti-wrinkle facial moisturizers (Herbalife #4 and

---

Eye Cream, Clinique Radiant Bronze Face & Body Tinted Self-Tanner SPF-15, and so on. *See* Lumene's Opposition at 11.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-5040 AHM (RCx) | Date | October 10, 2007 |
|---|---|---|---|
| Title | HERBALIFE INTERNATIONAL, INC. v. LUMENE NORTH AMERICA LLC *et al* | | |

Lumene #3 and #5). *See* Herbalife Mot. at 13-14. Although other products are not as similar in their purpose and application, they too are indisputably in the same general category of skin care products. Moreover, the retail prices of the products are similar. For instance, Herbalife's anti-wrinkle Daily Skin Booster (#3) and Lumene's Age-Defying Intensive Care (#3) and Lumene's Beauty Drops (#5) are retail-priced at $22.50, $17.99 and $21.99, respectively (before discounts).[9] Accordingly, this factor favors Herbalife.

      3. Sleekcraft factor #3: The similarity of the marks.

      The greater the similarity between two marks, the greater the likelihood of confusion. *GoTo.com*, 202 F.3d at 1206. In determining whether two marks are similar, courts consider their sight, sound and meaning. *Id.* "In analyzing this factor, "the marks must be considered in their entirety and as they appear in the marketplace." *Brookfield*, 174 F.3d at 1054 (citations omitted). Lumene is correct that the products cannot be compared side by side, because the goods are not sold in the same stores.[10] *See Fleischmann Distilling Corp. v. Maier Brewing Co.*, 314 F.2d 149, 161 (9th Cir.) (holding that ordinary buyers of beer would have only a general impression of the mark on beer carton where the two brands of beer are not sold in same store), *cert. denied*, 374 U.S. 830 (1963). Unless she or he can compare the products side by side in a store, "the ordinary purchaser has only general impressions with respect to an original product or its name." *Id.* at 156.

      According to the "anti-dissection" rule, "[t]he commercial impression of a trademark is derived from it as a whole, not from its elements separated and considered in detail." *Estate of P. D. Beckwith, Inc. v. Comm'r of Patents*, 252 U.S. 538, 545-46 (1920); *4 J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION* § 23:41(4th ed. 2004). Courts weigh similarities more heavily than differences. *GoTo.com*, 202 F.3d at 1206. Where the goods and services are directly competitive, as they are here, the degree of similarity required to prove a likelihood of confusion is less than in the case of dissimilar products. *Sleekcraft*, 599 F.2d at 350.

---

    [9]*See* CVS Pharmacy Drug Store, at http://www.cvs.com (last visited October 9, 2007); Herbalife Distributor, http://www.herbalrack.com (last visited October 9, 2007); Herbalife Products, http://www.herbalade.com (last visited October 9, 2007).

    [10]There appears to be no dispute that the parties' products are sold in entirely different stores and websites.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-5040 AHM (RCx) | Date | October 10, 2007 |
|----------|----------------------|------|------------------|
| Title | HERBALIFE INTERNATIONAL, INC. v. LUMENE NORTH AMERICA LLC *et al* | | |

Herbalife contends that the parties' marks are identical, simply because both use the same term, "Radiant C." Lumene argues the marks are very dissimilar based on the overall commercial impression of the packaging.

The marks are not identical. Herbalife's RADIANT C mark appears in stylized form, with an orange C overlay, set apart from all the other words in the packaging. The distinctiveness of this design sets it apart from Lumene's use of the term. On Lumene's products, "Radiant C" is not *the* "mark" at all; nowhere does it appear by itself. The word that appears at the top of each Lumene package is "Vitamin+." This is consistent with Lumene's explanation that the products in question are part of a larger line of products called the "Vitamin+" line. *See* Vähänen Decl. ¶ 6. Below "Vitamin+" on each package there is text containing the phrase "Radiant C," followed by a hyphenated and "Energy" on four of the products and by the words "Beauty Drops" on the fifth. On some of the Lumene products, "Radiant C-Energy" appears on one line, separate from other words, and on others, "Radiant C-Energy" is part of a longer phrase constituting the product name, *e.g.*, "Radiant C-Energy 5 Min. Mask" (see full names on page 3). Although these differences are noticeable upon a side-by-side comparison, an ordinary consumer likely would have the independent and more general impression that Herbalife's RADIANT C and Lumene's Vitamin+ refer to product *lines*, whereas Lumene's "Radiant C-Energy" appear as components in various lengthier product *names*.

Any similarity in the parties' marks is lessened by their trade dress. *See* McCARTHY § 23:60. Both parties prominently display their company names (housemarks) on their products, in large capital letters. *See Norm Thompson Outfitters, Inc. v. General Motors Corp.*, 448 F.2d 1293, 1298 (9th Cir. 1971) (likelihood of confusion mitigated where "the name of the company invariably accompanied the [trademarked] slogan"). It appears that Lumene always uses its housemark on its products, in-store displays, and coupons. Reply, Exs. A-2, A-3, A-4, A-5, B-2, C-2, C-3. Herbalife argues that it does not always use its Herbalife housemark in conjunction with its trademark, pointing to promotional items that only display RADIANT C without the housemark. *See* Reply, Declaration of Jacquie Carter ¶ 2, Ex. L. However, these items are distributed to Herbalife's distributors and other invited guests at special promotional or training events, in an environment in which there is no likelihood of confusion to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-5040 AHM (RCx) | Date | October 10, 2007 |
|----------|----------------------|------|------------------|
| Title | HERBALIFE INTERNATIONAL, INC. v. LUMENE NORTH AMERICA LLC *et al* | | |

consumers. Because of Herbalife's direct-selling distribution model,[11] consumers who receive promotional items that do not have the Herbalife housemark are unlikely to assume that any other company is their source.

In addition to the housemarks, the products also bear the companies' respective graphic logos. Herbalife's logo is an orange-colored stylized outline of a herbal plant within an orange oval or circle. Lumene's logo is a single cluster of arctic cloudberries (with the exception of Beauty Drops, which has three floating cloudberries). Lumene's packaging features a dark blue color, in addition to orange and white, although the blue is not prominent on Exhibit 7. Another distinguishing characteristic is that Lumene's packaging contains both English and Finnish, whereas Herbalife's has English and French. Finally, the shapes of Lumene's packages are different mostly: short and boxy, with three of the products in small jars within boxes, compared to Herbalife's skinny bottles or tubes. Each of these distinguishing characteristics is probably more visually prominent than is the phrase "Radiant C" on both parties' products.

Taken together, these characteristics create overall different impressions of the products, even without the benefit of a side-by-side comparison. The key similarities–the use of the term "Radiant C" and the color orange–are heavily outweighed by the differences. Herbalife has not established that the marks as they appear on the products are so similar as to result in a likelihood of confusion or that consumers will see either mark in isolation in a manner that is likely to confuse. This factor favors Lumene.

4. Sleekcraft factor #4: Evidence of actual confusion.

"Because it is often difficult for a plaintiff to obtain evidence of actual confusion, his failure to proffer such evidence is not dispositive." *Sleekcraft,* 599 F.2d at 352. Herbalife argues that discovery will likely reveal such evidence. Lumene responds that the two companies' products have co-existed in the U.S. market for two and half years without anyone becoming aware of actual confusion. Herbalife has had the opportunity to learn of actual confusion from its worldwide network of 1.5 million distributors for at least two years. Yet not only does it lack evidence of actual confusion, it claims it did not know that Lumene was selling Radiant C products until May 2007, during Lumene's

---

[11] *See* note 12 *infra.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-5040 AHM (RCx) | Date | October 10, 2007 |
|---|---|---|---|
| Title | HERBALIFE INTERNATIONAL, INC. v. LUMENE NORTH AMERICA LLC *et al* | | |

promotion of its Radiant C Beauty Drops product at CVS stores. *See* Herbalife Reply at 23. Although these circumstances suggest it will be difficult for Herbalife to find evidence of actual confusion, such evidence is not necessary to secure injunctive relief. *See Golden Door, Inc. v. Odisho*, 646 F.2d 347, 352 (9th Cir.1980) (affirming the grant of an injunction for plaintiff despite the absence of evidence of actual consumer confusion). This factor favors neither party.

     5.  Sleekcraft factor #5: The marketing channels used.

     Convergent marketing channels increase the likelihood of confusion between marks. *Nutri/System, Inc. v. Con-Stan Industries, Inc.*, 809 F.2d 601, 606 (9th Cir. 1987). Therefore, courts examine the proximity of marketing channels and presence or absence of direct competition, with similarity in advertising as one factor in that examination. *Id. See Amstar Corp. v. Domino's Pizza, Inc.*, 615 F.2d 252, 262 (5th Cir.) ("This factor takes into consideration where, how, and to whom the parties' products are sold. . ."), *cert. denied*, 449 U.S. 899 (1980).

     Herbalife argues the two companies target their Radiant C products at the same audience; that the same types of marketing channels are used, if not the exact same channels; and that the use of the Internet for sales and advertising increases the likelihood of confusion. Lumene argues that in fact the target audiences are different, that the companies' distribution channels are completely different, and that the parties' respective uses of the Internet are minimal.

     The evidence shows that the two companies' target customer demographic is similar but not identical and that there is partial overlap. Herbalife's deponents gave somewhat varying accounts of Herbalife's customers or target markets. According to Mr. Gilman, Director of Global Product Marketing, who cited a past product catalog, Herbalife's "Radiant C" products were targeted towards men and women from 25 to 45 years old. Supp. Diakos Decl., Ex. B, Gilman Dep. 25:4-7. According Mr. Liss, a vice president of marketing at Herbalife, "Radiant C" products are meant to be "universal" and would be targeted to men and women from age 16 to age 54, though Herbalife never specifically targets who bought it. Supp. Diakos Decl., Ex. A, Liss Dep. 52:12-13. Finally, Ms. Carter, a skin care product trainer, stated that the "Radiant C" line is marketed towards men and women, primarily women, in their twenties or 25 upwards. Supp. Diakos Decl., Ex. B, Carter Dep. 24:14-19. Lumene is clear about its target

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-5040 AHM (RCx) | Date | October 10, 2007 |
|---|---|---|---|
| Title | HERBALIFE INTERNATIONAL, INC. v. LUMENE NORTH AMERICA LLC *et al* | | |

market: women ages 25 and over.  Supp. Diakos Decl., Ex. D, Vähänen Dep. 85:21-25.
Thus, it appears that Herbalife's "Radiant C" customer base is broader than Lumene's
"Radiant C-Energy" customer base, but there is definitely some overlap and the
companies do compete for certain customers.  Lumene argues that Herbalife targets
health- and weight-conscious consumers because nutrition and weight management is
Herbalife's primary business.  Although that might be an indication of how some
customers came to buy Herbalife's skin care products – *i.e.* first they bought Herbalife's
nutrition and weight management products – that alone does not preclude the existence
of overlap between the companies' customer bases.

The two companies' products are sold in distinct outlets.  Lumene's products are
sold in CVS and Target retail stores and through the CVS website, www.cvs.com.  Sales
on www.cvs.com account for less than 1% of total sales of Lumene products at CVS.
Reply, Ex. E, Pastorkovich Dep. 21:6-8.  Herbalife's products are sold through (1)
Internet businesses operated by distributors and www.herbalifeshopping.com, (2) retail
establishments owned by distributors, such as beauty salons, (3) in-person solicitation,
and (4) Herbalife events.  Herbalife has not provided information on the extent of its
sales through each of these channels or how many distributors use each type of channel.
Historically, Herbalife has relied on "direct-selling" through its individual distributors,
who used old-fashioned door-to-door methods.[12]  Herbalife's contracts with distributors
prohibits the sale of Herbalife products through retail companies such as CVS and
Target.  Supp. Diakos Decl., Ex. A, Liss Dep. 139:5-12.

---

[12]Herbalife traditionally has employed a "direct-selling" model.  Its website defines "direct-
selling" as "the sale of a consumer product or service, person-to person, away from a fixed retail
location."  Diakos Decl. ¶ 7, Ex. A.  As one Herbalife deponent explained it, direct selling involves
Herbalife selling the product to independent distributors, who are individuals rather than companies, and
the distributor can sell the product in a variety of different ways.  Reply, Ex. H, Liss Dep. 31:4-21.
Historically, the distributor sold it in a "one-on-one" basis to people whom the distributor knew or from
door to door sales, but over time it "evolved into direct mail" and now there is "a lot of activity of
internet-based businesses."  Reply, Ex. H, Liss Dep. 31: 7-11, 53:11-15.  In addition to selling product,
distributors also sign up new distributors.  Reply, Ex. H, Liss Dep. 33:11-14.  Today, aside from the
various retail methods employed by distributors, Herbalife is operating a website,
www.herbalifeshopping, through which consumers can purchase Herbalife products.  Reply, Ex. H,  Liss
Dep. 41:9-17.  Although the business model of that website is unclear, it appears that Herbalife is
working together with distributors on that website.  Reply, Ex. H, Liss Dep. 41: 9-22.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No: | CV 07-5040 AHM (RCx) | Date | October 10, 2007 |
|---|---|---|---|
| Title | HERBALIFE INTERNATIONAL, INC. v. LUMENE NORTH AMERICA LLC *et al* | | |

Aside from their Internet presence, the companies' advertising approaches are entirely different. In launching the "Radiant C" line in 2000, Herbalife relied on Internet advertising, literature, product catalogs, fliers, brochures, and "pass-along direct mail" to promote its new line. Supplemental Declaration of Joanna A. Diakos, Ex. A, Liss Dep. 76: 8-24. Herbalife's independent distributors also arrange for their own advertising and promotion. *Id.* In contrast, Lumene primarily uses in-store displays, weekly circulars in newspapers, radio advertising, and magazine advertisements. Pastorkovich Decl. ¶¶ 11-12.

Herbalife relies heavily on the fact that both companies' products can be purchased on the Internet and on the fact that if a consumer searches for "Radiant C" using the Google search engine, both companies' products appear on the first page of results. Herbalife claims that its Radiant C products are sold "extensively" on the Internet. Carter Decl. ¶ 4. According to Lumene, and not refuted by Herbalife, no single website carries both Herbalife "Radiant C" products and Lumene "Radiant C-Energy" products. Even if a website such as Amazon.com or Ebay.com did carry both,[13] it would not be sufficient overlap, absent other convergent marketing channels, to allow this Court to weigh this factor in favor of Herbalife. *See M2 Software, Inc. v. Madacy Entertainment*, 421 F.3d 1073, 1081 (9th Cir. 2005) (finding that this Court made harmless error in ruling that the marketing channels factor slightly favored plaintiff where the only overlap between the parties' goods occurred on Amazon.com).

Herbalife selectively quotes Ninth Circuit cases for the broad proposition that use of the Internet as a marketing tool increases the likelihood of confusion. *E.g., Brookfield*, 174 F.3d at 1057. Those cases are of little import here. In *Brookfield*, the court stated that "courts have consistently recognized [concurrent use of the Internet as a marketing channel] as exacerbating the likelihood of confusion" in the context of two parties whose competing products were Web-based products (searchable movie databases called "MovieBuff" and "moviebuff.com") and the issue was use of "MOVIEBUFF" in their domain names. *Brookfield*, 174 F.3d at 1056-57. In *GoTo.com*, where the parties operated competing search engines, the court found that "the Web, as a marketing channel, is particularly susceptible to a likelihood of confusion since, as it did in this case, it allows for competing marks to be encountered at the same time, on the

---

[13]The Court uses Amazon and Ebay as examples because those websites provide a platform for individuals and companies of all types to sell their products.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-5040 AHM (RCx) | Date | October 10, 2007 |
|---|---|---|---|
| Title | HERBALIFE INTERNATIONAL, INC. v. LUMENE NORTH AMERICA LLC *et al* | | |

same screen." *GoTo.com*, 202 F.3d at 1207. Here, Herbalife's RADIANT C mark does not appear on the same screen at the same time with Lumene's "Radiant C-Energy" term. The Lumene and Herbalife products are primarily sold in brick-and-mortar shops or through personal contacts, respectively. Indeed, the Ninth Circuit has clarified the lesson of *GoTo.com* and *Brookfield*, stating that "[t]he proper inquiries are whether both parties 'use the Web as a *substantial* marketing and advertising channel,' whether the parties' marks 'are utilized in conjunction with Web-based products,' and whether the parties' marketing channels overlap in any other way." *Entrepreneur Media, Inc.*, 279 F.3d at 1151 (citing *GoTo.com*, 202 F.3d at 1207 and *Brookfield*, 174 F.3d at 1057) (emphasis in original). None of these circumstances appears to be present here.

Rather, this case is more similar to the situation in *Glow Industries, Inc. v. Lopez*, 252 F. Supp. 2d 962 (C.D. Cal. 2002). There, on a preliminary injunction motion, the court found that the marketing channels factor favors plaintiff where both parties offered perfumes and skin care products in upscale department stores and specialty stores that are located in the same shopping malls. *Id.* at 1001. That finding was "reinforced" by the fact that both sell over the Internet. *Id.* Here, in contrast, Herbalife does not even argue that the parties' products are sold in the same types of brick-and-mortar shops or that any of the shops are physically proximate to one another. Instead, Herbalife would have the Court find that the marketing channels converge just because a Google search yields both parties' products, but on different websites.

Because Herbalife has not shown any overlap in sales outlets, any significant similarities in the types of distribution channels, or any substantial use of the Internet, the Court finds that this factor favors Lumene.

6. Sleekcraft factor #6: The type of goods and the degree of care likely to be exercised by the purchaser.

The ordinary purchaser is assumed to take more care in purchasing "expensive" items which he or she buys infrequently, than in buying everyday, relatively inexpensive items. *See Sleekcraft*, 599 F.2d at 353. Of course, "price alone is not determinative of the care a consumer will take in making purchases, and our touchstone remains the general impression that is left with the ordinary consumer." *The Sports Authority, Inc. v. Prime Hospitality Corp.*, 89 F.3d 955, 965 (2d Cir. 1996). Thus, while a court might find that generally purchasers of relatively inexpensive items are not sophisticated, it

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-5040 AHM (RCx) | Date | October 10, 2007 |
|---|---|---|---|
| Title | HERBALIFE INTERNATIONAL, INC. v. LUMENE NORTH AMERICA LLC *et al* | | |

must look at the specific products in question rather than just the price.

Herbalife argues that both parties sell relatively inexpensive, products and rely heavily on Internet for sales and advertising, therefore justifying an inference that consumers will use less care in purchasing these products.  Herbalife's products sell for $5 to $22.50, and Lumene's products sell for $2.99 to $21.99.  Even though skin care products are personal in nature, Herbalife likens the purchasing experience at mass-market stores such as CVS and Target to the experience of buying ordinary grocery items in which consumers are inundated with a dizzying array of inexpensive alternatives.  Herbalife argues that consumers exercise little care in purchasing such inexpensive personal products, surmising that women probably give as little thought to buying skin care products as they do to choosing between different kinds of tampons on the store shelf.

Herbalife's analogies are unpersuasive.  First, skin care products are, by their nature, unlike ordinary grocery or personal items, such as bread and margarine or toilet paper and sanitary pads.  *Cf. Lever Bros. Co. v. American Bakeries Co.*, 693 F.2d 251, 259 (2d Cir. 1982) ("The ordinary purchaser of bread and margarine is a casual buyer, [because] the bustling, self-service atmosphere of a typical supermarket makes careful examination of products unlikely."); *Playtex Prods., Inc. v. First Quality Hygienic, Inc.*, 965 F.Supp 339, 344 (E.D.N.Y. 1996) ("The low price point at which tampons are sold supports an inference that buyers will exercise relatively little care when choosing products from the shelf.  However, the highly personal nature of the product may offset somewhat the conventional wisdom on this factor. . . .").  Many courts have recognized that purchasers of fragrances and skin care products tend to exercise a high degree of care and brand consciousness.  *Glow Indus.*, 252 F. Supp. 2d at 1001-02 (citing, *inter alia*, *Lucien Lelong, Inc. v. Lenel, Inc.*, 181 F.2d 3, 4 (5th Cir. 1950); *Conopco, Inc. v. Cosmair, Inc.*, 49 F.Supp.2d 242, 257 (S.D.N.Y. 1999); *Giorgio Beverly Hills*, 869 F.Supp. at 185; *Clinique Laboratories, Inc. v. Dep Corp.*, 945 F.Supp. 547, 556 (S.D.N.Y. 1996)).

Second, Herbalife's argument that consumers exercise little care in buying these products fails when one considers the relevant consumer markets in which the parties' products are sold.  At the hearing, Herbalife attempted to distinguish Lumene's products from the high-end personal products in *Glow Indus.* based on price alone.  The Court is unconvinced.  In the context of mass-market retailers such as CVS and Target, Lumene's

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-5040 AHM (RCx) | Date | October 10, 2007 |
|---|---|---|---|
| Title | HERBALIFE INTERNATIONAL, INC. v. LUMENE NORTH AMERICA LLC *et al* | | |

prices are not inexpensive ($17.99-$21.99 for normal-sized, as opposed to sample-sized containers); Herbalife has not demonstrated otherwise. Moreover, Lumene markets its Radiant C-Energy products to women ages 25 and older who are looking to improve the quality of their skin, as is evident by the emphasis on the anti-aging language on Lumene's products. *See* Supp. Diakos Decl., Ex. D, Vähänen Dep. 85:21-25. Thus, the budget-conscious, yet quality-conscious female consumer who will be looking at Lumene's products is likely to exercise great care.

Moreover, in the bustling and heavily discounted atmosphere of CVS and Target stores the ordinary purchaser will not find both Herbalife and Lumene products. Thus, even if some customers will buy a Lumene product on impulse – exercising little care in the shopping aisle – that does not support an inference that they would be confused between Herbalife and Lumene products.

As for Herbalife's market, Herbalife targets its products to consumers who are health-conscious and interested in improving their appearance and nutritional habits. Liss Dep. 44:10-11. Indeed, Mr. Liss, an Herbalife marketing executive, acknowledged that Herbalife's products are at the high end of the mass market for skin care products in terms of price. Supp. Diakos Decl., Ex. A, Liss Dep. 81:23-82:2, 85:6-11. Mr. Liss also acknowledged that skin care products tend to have a great "loyalty factor," suggesting that customers will take more care in initially selecting a product because they tend to purchase the same product again and again. *See* Supp. Diakos Decl., Ex. A, Liss Dep. 86:1-3.

Finally, that both parties use the Internet for advertising and marketing does not necessarily decrease the level of consumer care. A consumer will not come unawares upon a selection of both Lumene and Herbalife products on any given website and thoughtlessly add one or the other to her online shopping basket. If anything, a consumer will use *more* care in choosing between the two companies' Radiant C products online. Consider the consumer who types "Radiant C" in a search engine, presumably searching for Lumene's or Herbalife's products (or else why use that search term?). That consumer will then have to exercise some care in choosing among the search results in order to find the product she specifically had in mind. Compare that with the consumer who is not searching for "Radiant C" online, but simply browsing the online version of CVS drugstore. She will find an array of goods similar to those in the brick-and-mortar store; nothing about the online experience will affect her degree of care

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-5040 AHM (RCx) | Date | October 10, 2007 |
|---|---|---|---|
| Title | HERBALIFE INTERNATIONAL, INC. v. LUMENE NORTH AMERICA LLC *et al* | | |

in selecting among skin care products.

Herbalife has not demonstrated that ordinary purchasers of skin care products are not likely to exercise a high degree of care. Thus, this factor favors Lumene.

      7.  Sleekcraft factor #7: Lumene's intent in selecting the mark.

Knowing adoption of a mark closely similar to another's allows a court to presume that the public will be deceived as the alleged infringer intended. *Sleekcraft*, 599 F.2d at 354. However, this factor is of minimal importance and there is no requirement that the defendant actually intend to confuse customers. *GoTo.com*, 202 F.3d at 1208.

Lumene is deemed to have had constructive notice of Herbalife's rights based on Herbalife's federal registrations. 15 U.S.C. § 1072. The RADIANT C design mark was registered in February 2005, and the Radiant C word mark was registered in June 2006. Herbalife gave actual notice when it served the Complaint.

Herbalife argues that a defendant's refusal to cease use after constructive and actual notice is evidence of willful intent. The case that Herbalife cites does not support such a sweeping proposition. In *Discovery Communications, Inc. v. Animal Planet, Inc.*, the court granted default judgment against owners of a pet store that used plaintiff's ANIMAL PLANET mark as the name of their store. 172 F. Supp. 2d 1282, 1292 (C.D. Cal. 2001). There, defendants continued and even increased their use of the mark despite assuring plaintiff that they would cease use. *Id.* at 1290. On that basis, the court found that defendants acted willfully and in bad faith and, moreover, awarded attorney's fees for willful and deliberate infringement. *Id.* at 1290, 1292. This case presents significantly different circumstances. Herbalife does not have such a legally unambiguous case of infringement, as did Discovery Communications. *See* McCARTHY § 23:120 ("It is difficult to see how such continued use by defendant could be construed as an intent to deceive except in the case of a very clear and legally unambiguous infringement."). Here, the marks are similar but not identical; the defendant proffers a plausible claim that it did not have actual notice until the institution of this lawsuit; and the decision by defendant after it reviewed the complaint that it wanted to defend against the claim, rather than cease and desist, is not facially illegitimate. All indications are that Lumene has a good faith belief that its use of "Radiant C" is not infringing. Therefore, the Court will not presume willful intent.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-5040 AHM (RCx) | Date | October 10, 2007 |
|---|---|---|---|
| Title | HERBALIFE INTERNATIONAL, INC. v. LUMENE NORTH AMERICA LLC *et al* | | |



Herbalife has not presented any evidence of actual intent. To the contrary, Lumene has offered evidence that the person who conceived of "Radiant C-Energy" did not know of Herbalife at the time. Vähänen Decl. ¶ 13. The Vice President of the Finnish parent company testified in his deposition that he had not seen any trademark search report that showed Herbalife's registration applications in the U.S. or the European Union. Supp. Diakos Decl., Ex. D, Vähänen Dep. 99:2-9. Lumene's explanation for the origin of "Radiant C-Energy" is incomplete, because it did not provide declarations from the individuals directly involved in the process of selecting that term. Nonetheless, Herbalife has not met its burden. This factor favors neither party.

        8. Sleekcraft factor #8: The likelihood of expansion.

"A strong possibility that either party may expand his business to compete with the other will weigh in favor of finding that the present use is infringing." *Sleekcraft*, 599 F.2d at 354. As Herbalife indicated, when the two companies already compete to a significant extent, this factor is of minimal importance. *See Brookfield*, 174 F.3d at 1060. Lumene did not address this factor. Therefore, this factor favors neither party.

        9. Summary of *Sleekcraft* factors.

The *Sleekcraft* factors should not be applied mechanistically and the Court need not attribute equal weight to each factor. As the Ninth Circuit has stated, the most important factors are the similarity of the marks, the relatedness of the products, and the marketing channels used. *See Goto.com*, 202 F.3d at 1205, 1207. With these principles in mind, the Court concludes that it is not likely that Herbalife will ultimately prove a likelihood of consumer confusion. The factors that favor Herbalife are the strength of its mark (only slightly favoring Herbalife) and the relatedness of the parties' goods, whereas three of the eight factors favor Lumene. The Court has found that the parties' marks are more dissimilar than similar and that their marketing channels do not converge. Coupled with the fact that consumers of skin care products tend to exercise care in making their selections, and the lack of evidence of actual confusion or intent on Lumene's part, Herbalife has not demonstrated that it will prove a likelihood of consumer confusion. Therefore, even assuming that Herbalife is likely to prove it is the owner of a protectable trademark, Herbalife has not demonstrated a likelihood of success on the merits of its trademark infringement claim.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-5040 AHM (RCx) | Date | October 10, 2007 |
|---|---|---|---|
| Title | HERBALIFE INTERNATIONAL, INC. v. LUMENE NORTH AMERICA LLC *et al* | | |

### B.    Irreparable Injury/Balance of Hardships

Where a party demonstrates a likelihood of succeeding on a trademark infringement claim, the court may presume irreparable injury. *GoTo.com*, 202 F.3d at 1209. The presumption does not apply here because Herbalife has not demonstrated a probability of success on the merits. Therefore the Court proceeds to the alternate formulation recognized in Ninth Circuit case law, under which Herbalife could be entitled to a preliminary injunction if it establishes "the existence of serious questions going to the merits and that the balance of hardships tips sharply in [its] favor." *See GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199 (9th Cir. 2000). Even assuming that Herbalife has established the existence of serious questions going to the merits, it has not demonstrated that the balance of hardships tips sharply in its favor.

Herbalife has presented no evidence that it has suffered, or will suffer, irreparable harm due to Lumene's actions. It claims that without a preliminary injunction, "Herbalife will be irreparably injured by Lumene's ability to use the goodwill created by Herbalife to attract consumers to its competing skin care product line, thus increasing its share of an exclusive market." Moreover, it claims that if Lumene's products should ever have quality or safety problems, Herbalife will be injured by being associated with such products. Although injury to goodwill can qualify as irreparable harm, Herbalife has offered no real basis for the supposed impact on its goodwill. *See Glow Indus.*, 252 F. Supp. 2d at 1004 (finding that claim that relationships with wholesalers or business outlets will be affected is not supported by evidence). Given the lack of any indication that Herbalife's consumers or distributors associate Herbalife with Lumene's Radiant C-Energy products, the court will not simply assume that Lumene is trading on  Herbalife's goodwill or hurting Herbalife's reputation.

That Herbalife did not file suit until more than two years after Lumene launched its Radiant C-Energy products in the U.S. reinforces the conclusion that Herbalife will not suffer irreparable injury. Herbalife argues that it was reasonable that it did not know of Lumene's products earlier because Lumene's Radiant C products are only five of over 300 Lumene products for sale in the U.S.[14], and they are sometimes housed in the

---

[14]One of the Lumene's deponents, Mr. Vähänen of Lumene Oy, estimated that CVS is selling approximately 450 products, while another Lumene deponent, Mr. Pastorkovich of Defendant Lumene, estimated that they are selling "upwards of 300" products in the U.S..  Herbalife's Supplemental Paper,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

|  Case No. | CV 07-5040 AHM (RCx) | Date | October 10, 2007 |
|---|---|---|---|
| Title | HERBALIFE INTERNATIONAL, INC. v. LUMENE NORTH AMERICA LLC *et al* | | |

cosmetics department, rather than the skin care department. Although Herbalife's reasons may refute a *laches* argument, which Lumene does not quite make, those very reasons bolster the view that Herbalife has not suffered irreparable injury for two years, and thus is unlikely to suffer such injury if Lumene is not preliminarily enjoined.

With respect to the harm it would suffer if an injunction were to issue, Lumene contends that if it has to pull the Radiant C-Energy products from stores, its reputation will be devastated because consumers will think there is something wrong with Lumene and will buy some other brand and not return to Lumene. Herbalife argues in essence that no one will really notice, because Lumene would only have to remove and repackage five of its hundreds of products, and the products do not appear to be very successful anyway. Moreover, as Herbalife points out, the depositions reveal that Lumene plans to discontinue use of "Radiant C-Energy" term in spring 2008 because it has reformulated the Vitamin+ line. Reply, Ex. F, Vähänen Dep. 80:8-81:20; Reply, Ex. E, Pastorkovich Dep. 58:14-23. (These arguments are inconsistent with Herbalife's contentions about irreparable injury.) Lumene has not indicated whether it would attempt to redesign the products and return them to the stores if the injunction is issued nor has it provided estimated costs in terms of lost profits or revenue.

Because neither side has made a strong showing of harm, the Court cannot find that the balance of hardships tips sharply in Herbalife's favor. Even assuming that Herbalife has raised serious questions regarding the merits, the Court cannot grant injunctive relief.

## V.   CONCLUSION

For the foregoing reasons, the Court DENIES Herbalife's motion for a preliminary injunction.[15]

Initials of Preparer

---

Ex. P, Vähänen Dep. 20:22-25; Herbalife's Supp. Paper, Ex. Q, Pastorkovich Dep. 25:4-8.

[15]Docket #14.

# EXHIBIT A


Radiant