1 | SHEPPARD MULLIN RICHTER & HAMPTON LLP
KENT R. RAYGOR, Cal. Bar No. 117224
2 | VALERIE E. ALTER, Cal. Bar No. 239905
1901 Avenue of the Stars, Suite 1600
3 | Los Angeles, California  90067-6017
Telephone:   (310) 228-3700
4 | Facsimile:   (310) 228-3701
Email:       kraygor@sheppardmullin.com
5 |            valter@sheppardmullin.com

6 | Attorneys for Plaintiff
HERBALIFE INTERNATIONAL, INC.

7 |

8 | UNITED STATES DISTRICT COURT

9 | CENTRAL DISTRICT OF CALIFORNIA

10 | WESTERN DIVISION

| | |
|---|---|
| HERBALIFE  INTERNATIONAL, INC., a Nevada Corporation, | Case No. CV 07-05040 AHM  (RCx) |
| Plaintiff, | **PLAINTIFF HERBALIFE INTERNATIONAL, INC.'S MEMORANDUM OF CONTENTIONS OF LAW AND FACT** |
| v. | [C.D. Cal. Local Rule 16-4] |
| LUMENE NORTH AMERICA LLC., a Delaware limited liability company; and DOES 1 through 10, inclusive, | COMPLAINT filed:  August 2, 2007 |
| Defendants. | Pre-trial Conference:   May 4, 2009 |
| | Trial Date:   May 19, 2009 |

-1-

## TABLE OF CONTENTS

Page

I. FACTUAL CONTENTIONS ................................................................................. 1

    A.    Herbalife's Business And Marks. .................................................. 1

    B.    Lumene's Unauthorized Use Of Herbalife's RADIANT C® Marks On Directly Competing Products. ................................................. 3

II. LEGAL BRIEF ............................................................................................... 5

    A.    Summary Of Herbalife's Claims ...................................................... 5

    B.    Elements Required To Establish Herbalife's Claims ......................... 6

        1.    Trademark Infringement, 15 U.S.C. § 1114............................. 6

        2.    Unfair Competition, 15 U.S.C. § 1125(a). ............................... 6

        3.    Trademark Infringement, Cal. Bus. & Profs. Code § Code § 14245(a). ........................................................................ 6

        4.    Unfair Competition And False Advertising, Cal. Bus. & Profs. Code §§ 17200, 17500 ............................................. 7

            a.    § 17200 ............................................................... 7

            b.    § 17500 ............................................................... 7

        5.    Common Law Trademark Infringement And Unfair Competition ....................................................................... 8

    C.    Brief Description Of Key Evidence In Support Of Each Claim ......................... 8

        1.    Trademark Infringement, 15 U.S.C. § 1114............................. 8

        2.    Unfair Competition, 15 U.S.C. § 1125(a). ............................... 9

        3.    Trademark Infringement, Cal. Bus. & Profs. Code § Code § 14245(a). ...................................................................... 10

        4.    Unfair Competition And False Advertising, Cal. Bus. & Profs. Code §§ 17200, 17500 ........................................... 10

5.  Common Law Trademark Infringement And Unfair Competition ............................................................ 10

D.  Summary Of Affirmative Defenses .................................................. 10

E.  Elements Required To Establish Lumene's Defenses ...................... 11

    1.  Waiver, Estoppel, Acquiescence, Or Laches ....................... 11

        a.  Waiver ........................................................................ 11

        b.  Estoppel ..................................................................... 11

        c.  Acquiescence ............................................................. 12

        d.  Laches ........................................................................ 12

    2.  Fair Use .................................................................................. 12

F.  Statement Of Evidence In Opposition To Each Affirmative Defense ............ 12

    1.  Waiver, Estoppel, Acquiescence, Or Laches ....................... 12

        a.  Waiver ........................................................................ 12

        b.  Estoppel ..................................................................... 13

        c.  Acquiescence ............................................................. 13

        d.  Laches ........................................................................ 13

    2.  Fair Use .................................................................................. 14

G.  Evidentiary Issues ............................................................................ 14

H.  Issues Of Law ................................................................................... 15

    1.  Herbalife's Trademarks Are Valid ....................................... 15

    2.  Lumene's Use Of "RADIANT C" Is Likely To Cause Consumer Confusion ............................................................. 16

        a.  The Parties' Marks Are Identical ............................... 17

            (1)  Lumene's Is Using The Mark "RADIANT C" ................ 18

            (2)  Lumene's Use Of It's House Mark Does Not

Change This Conclusion ................................................. 19

b.    Lumene's "RADIANT C" Products Directly Compete
      With Herbalife's Products. .......................................... 20

c.    Lumene And Herbalife Use The Same Marketing
      Channel To Reach The Same Consumers. ................................ 23

d.    The Herbalife RADIANT C® Marks Are Strong. .................... 24

      (1)    The Radiant C® Trademark Is Suggestive. ..................... 25

e.    There Is Evidence Of Willful Intent. ......................................... 27

f.    Lack Of Evidence Of Actual Confusion Is Not
      Dispositive. ................................................................................ 27

g.    The Likelihood Of Expansion Into Other Markets
      Factor Is Not Necessary At This Point Because The
      Parties' Current Goods Already Directly Compete. .................. 28

h.    Purchasers Will Likely Exercise A Low Degree Of
      Care. ........................................................................................... 28

III. BIFURCATION OF ISSUES .................................................................. 29

IV. JURY TRIAL ........................................................................................... 29

V. ATTORNEYS' FEES ............................................................................... 30

VI. ABANDONMENT OF ISSUES ............................................................... 30

1

<u>TABLE OF AUTHORITIES</u>

2

<u>Federal Cases</u>

3

*AMF Inc. v. Sleekcraft Boats*,
    599 F.2d 341 (9th Cir. 1979) ...................................................... 16, 20, 22, 25, 26, 27, 28

4

5

*A.T. Cross Co. v. Jonathan Bradley Pens, Inc.*,
    470 F.2d 689 (2d Cir. 1972)..................................................................................... 20

6

*Academy of Motion Picture Arts and Sciences v. Creative House Promotions*, Inc.,
    944 F.2d 1446 (9th Cir. 1991) ............................................................................. 7, 8

7

8

*Americana Trading, Inc. v. Russ Berrie & Co.*,
    966 F.2d 1284 (9th Cir. 1992) ......................................................................... 15, 20

9

*AutoZone, Inc. v. Tandy Corp.*,
    373 F.3d 786 (6th Cir. 2004) ................................................................................. 25

10

11

*Avery Dennison Corp. v. Sumpton*,
    189 F.3d 868 (9th Cir. 1999) ................................................................................. 24

12

*Brookfield Communications, Inc. v. West Coast Entertainment Corp.*,
    174 F.3d 1036 (9th Cir. 1999) .................................. 6, 15, 16, 18, 22, 23, 24, 28

13

14

*Cab Co. v. Yellow Cab/Elk Grove*,
    419 F.3d 925 (9th Cir. 2005) ........................................................................... 25, 26

15

*Dairy Queen v. Wood*,
    369 U.S. 469 (1962)............................................................................................... 29

16

17

*Discovery Comms., Inc. v. Animal Planet, Inc.*,
    172 F. Supp. 2d 1282 (C.D. Cal. 2001) ..................................................... 18, 22, 28

18

*Eclipse Associates Ltd. v. Data General Corp.*,
    894 F.2d 1114 (9th Cir. 1990) ............................................................................... 27

19

20

*Fruit of the Loom, Inc. v. Girouard*,
    994 F.2d 1359 (9th Cir. 1993) ............................................................................... 17

21

*Glow Indus., Inc. v. Lopez*,
    252 F. Supp. 2d 962 (C.D. Cal. 2002) .................................................................... 6

22

23

*GoTo.com, Inc. v. The Walt Disney Co.*,
    202 F.3d 1199 (9th Cir. 2000) ................................................................ 16, 17, 23, 24, 25

24

*Golden Door, Inc. v. Odisho*,
    437 F. Supp. 956 (N.D. cal. 1977) ......................................................................... 26

25

26

*Int'l Kennel Club, Inc. v. Mighty Star, Inc.*,
    846 F.2d 1079 (7th Cir. 1988) ............................................................................... 20

27

28

-iv-

*Japan Telecom, Inc. v. Japan Telecom Am., Inc.*,
   287 F.3d 866 (9th Cir. 2002) ................................................................ 26

*K-Swiss Inc. v. USA Aisiqi Shoes, Inc.*,
   291 F. Supp. 2d 1116 (C.D. Cal. 2003) ................................................ 18

*Lois Sportswear, U.S.C. Inc. v. Levi Strauss & Co.*,
   799 F.2d 867 (2d Cir. 1986) ................................................................ 15

*Mexican Food Specialties v. Festida Foods, Ltd.*,
   953 F. Supp. 846 (E.D. Mich. 1996) .................................................... 29

*Nissan Motor Co., Ltd. v. Nissan Computer Corporation*,
   89 F. Supp. 2d 1154 ............................................................... 8, 22, 23

*Nutri/System, Inc. v. Con -Stan Indus., Inc.*,
   809 F.2d 601 (9th Cir. 1987) ............................................................... 23

*Official Airline Guides, Inc. v. Goss*,
   6 F.3d 1385 (9th Cir. 1993) ................................................................ 17

*Pickle-Rite Co. v. Chicago Pickle Co.*,
   171 F. Supp. 671 (N.D. Ill. 1959) ....................................................... 29

*Pignons S. A. de Mecanique de Precision v. Polaroid Corp.*,
   657 F.2d 482 (1st Cir. 1981) ............................................................... 28

*Playtex Prods., Inc. v. First Quality Hygienic*,
   965 F. Supp. 339 (E.D.N.Y. 1996) ...................................................... 29

*Resource Lenders, Inc. v. Source Solutions, Inc.*,
   404 F. Supp. 2d 1232 (E.D. Cal. 2005) .................................................. 8

*Rodeo Collection, Ltd. v. West Seventh*,
   812 F.2d 1215 (9th Cir. 1987) ....................................................... 25, 26

<u>State Cases</u>

*Conti v. Board of Civil Service Comm'rs*,
   1 Cal. 3d 351 (1969) ........................................................................... 12

*Cowles Magazines & Broad., Inc. v. Elysium, Inc.*,
   255 Cal. App. 2d 731 (1967) ................................................................. 6

*DRG/Beverly Hills, Ltd. v. Chopstix Dim Sum Cafe & Takeout III, Ltd.*,
   30 Cal. App. 4th 54 (1994) .................................................................. 11

*Griffin v. Beresa, Inc.*,
   143 Cal. App. 2d 299 (1956) ............................................................... 12

*Mallard Creek  Industries, Inc. v. Morgan*,
   56 Cal. App. 4th 426, 65 Cal. Rptr. 2d 461 (1997)............................... 8

*McCann v. Lucky Money, Inc.*,
   129 Cal. App. 4th 1382 (2005) .......................................................................... 7

*McDermott v. Superior Court*,
   6 Cal. 3d 693 (1972) ...................................................................................... 11

*Miller v. Eisenhower Medical Center*,
   27 Cal. 3d 614 (1980) .................................................................................... 12

*Roberts v. Superior Court*,
   9 Cal. 3d 330 (1973) ...................................................................................... 11

<u>Federal Statutes</u>

15 U.S.C. § 1057(b) ........................................................................................... 15

15 U.S.C. § 1072 ................................................................................................ 15

15 U.S.C. § 1115(a) ........................................................................................... 15

15 U.S.C. §1117(a) ............................................................................................ 30

<u>State Statutes</u>

Cal. Civ. Code § 3513 ........................................................................................ 11

Cal. Civ. Code § 3516 ........................................................................................ 12

Cal. Evid. Code § 623 ........................................................................................ 11

Business & Professions Code § 17200 ................................................................ 7

<u>Other Authorities</u>

4 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION 23:43 (4th Ed. 2006) ............ 11

1    Pursuant to LOCAL RULE 16-4, Plaintiff Herbalife International, Inc.

2  submits this Memorandum of Contentions of Law and Fact.

### I.

### FACTUAL CONTENTIONS

**A.    Herbalife's Business And Marks.**

6    Herbalife has been engaged in the development, manufacture, promotion,

7  distribution and sale of high quality weight loss, nutritional, personal care, and other

8  products to the general public since 1980.  Herbalife's products are distributed and

9  sold to consumers through a direct-sales network of more than 1.6 million distributors

10  in more than 64 countries.

11    Herbalife has become well known throughout the United States and

12  elsewhere as a source of high quality nutritional supplements and personal care

13  products.  Although Herbalife is a premier nutrition and weight-management

14  company, it also has a significant line of skin care products, including its popular

15  RADIANT C® line, that it markets to men and women from 25 to 45 years old.

16  Herbalife thus considers any company or store from which a consumer might buy a

17  competitive skin care product to be a competitor.  It aims to draw consumers away

18  from the department stores and mass market retailers by offering them a high-quality

19  product for less than what they would pay in a department store or mass market

20  retailer for a like product.

21    Herbalife's RADIANT C® skin care line (RADIANT C® Daily Facial

22  Scrub Cleanser, RADIANT C® Face Quencher, RADIANT C® Body Lotion SPF 15,

23  RADIANT C® Daily Skin Booster) is marketed under the trademark RADIANT C®

24  and utilizes an orange color scheme in its product packaging and related marketing

25  materials.  Herbalife has continuously and extensively used its RADIANT C®

26  trademarks in commerce in the United States in connection with skin care products

27  since at least September 18, 2000.

28

Herbalife has obtained federal trademark protection for its RADIANT C® marks, and owns two RADIANT C® trademark registrations (hereinafter the "**Herbalife RADIANT C® Marks**") issued by the United States Patent and Trademark Office ("**USPTO**"):

| Mark | Reg. No. | Goods | Owner | Date Of First Use |
|---|---|---|---|---|
| RadiantC | 2,926,493—filed July 3, 2000; statement of use filed February 2, 2003; registered February 15, 2005 | Int'l Class 3, for "skin care products, namely, facial creams, facial cleansers, lotions, moisturizers and toners" | Herbalife International, Inc., by assignment from Herbalife International of America, Inc. | September 18, 2000 |
| **RADIANT C** | 3,100,479—filed April 29, 2005; registered June 6, 2006 | Int'l Class 3, for "creams, lotions, gels, washes, masks, and milks for use on the face and body" | Herbalife International, Inc. | September 18, 2000 |

Herbalife has used the RADIANT C mark in both its stylized format (as shown in Reg. No. 2,926,493) and the non-stylized format (as shown in the word mark registration, Reg. No. 3,100,479) since September 18, 2000.

Herbalife has spent and continues to spend substantial sums of money, time, and effort to develop, advertise, and promote its RADIANT C® skin care products, through, in part, distribution of catalogs and brochures, word of mouth by its distributors, advertising on its Internet website and the websites of many of its distributors, as well as through RADIANT C®-branded promotional items such as hats, chairs, bubble pens, candles, bags, and pins.

Herbalife's RADIANT C® skin care products are sold extensively through (1) authorized independent distributors utilizing both direct marketing and retail establishments such as beauty salons, (2) the Internet at www.herbalifeshopping.com and independent distributor websites, and (3) fairs,

-2-

1  organized consumer events, and other Herbalife events where consumers are

2  presented with the products.  Herbalife has sold approximately 1.2 million units (over

3  $17.4 million) of its RADIANT C® skin care products in the United States, and $152

4  million of its RADIANT C® skin care products worldwide since 2000.

5          As a result of these sales and the promotional efforts associated with

6  them, Herbalife's RADIANT C® skin care products have become known as

7  originating from and authorized by Herbalife.  Herbalife has not authorized defendant

8  Lumene to use Herbalife's RADIANT C® trademarks.

9  **B.** **Lumene's Unauthorized Use Of Herbalife's RADIANT C® Marks On**

10     **Directly Competing Products.**

11         Lumene is a Delaware limited liability company and subsidiary of

12  Lumene Group, based in Espoo, Finland, that was established in February 2006.

13  Lumene maintains a website at www.lumene.com, and Lumene Group maintains a

14  website at www.lumenegroup.com.  Lumene designs, markets, manufactures, sells,

15  and distributes cosmetics and personal care products through resellers and retail

16  establishments in the United States.  Its products are available at CVS and Target

17  Stores, two of the largest retailers in the United States.

18         Lumene has used Herbalife's RADIANT C® trademark to sell at least

19  five skincare products in the United States without Herbalife's permission:  (1)

20  "**Radiant C** Beauty Drops", (2) "**Radiant C**-Energy Age-Defying Intensive Care",

21  (3) "**Radiant C**-Energy Eye Serum", (4) "**Radiant C**-Energy 5 Min. Mask", and (5)

22  "**Radiant C**-Energy Age-Defying Day Cream SPF 15."  Like Herbalife, Lumene, too,

23  uses an orange color scheme on its competing skin care products and related

24  promotional materials.

25         Lumene has widely distributed and marketed its skin care products

26  bearing the Herbalife RADIANT C® Marks in the United States.  Lumene's products

27  bearing the Herbalife RADIANT C® Marks have been sold at CVS/pharmacy stores

28  across the United States, through CVS's website at www.cvs.com, and at Target

stores.  Lumene has also engaged in extensive promotion of its "RADIANT C" products in the United States, particularly with respect to its "RADIANT C" beauty drops, of which it distributed 500,000 samples and for which it held launch parties throughout the country.  Moreover, by Lumene's own admission, Lumene's "Radiant C-Energy Age-Defying Intensive Care" cream is among its best-selling products in the United States.

Although Lumene uses "RADIANT C" in conjunction with other words on its packaging, "RADIANT C" is truly Lumene's product name.  Consider Lumene's beauty drops:



The phrase "RADIANT C" is placed in the center of Lumene's product and is highlighted in a bright orange bar, drawing one's eye directly to it.  This suggests that Lumene intended its mark to be "RADIANT C."

Moreover, Lumene's internal documents and public facing advertisements show that "RADIANT C" is its intended product name.  Lumene's invoices for its "RADIANT C" products refer to those products as "RADIANT C," as do its internal accounting reports.  Lumene's advertisements for its "RADIANT C" line, as well as the coupons and advertisements it has displayed in CVS drug stores referred to the products at "RADIANT C".

Herbalife has a registered trademark in the U.S. and Europe for the term "Radiant C" for use with skin care products.  Contrary to Lumene's assertions, it is not just using "LUMENE VITAMIN+ RADIANT C-ENERGY", "VITAMIN+", or

"RADIANT-C ENERGY" with its skin care product in the U.S.  On January 2, 2009, we purchased the Lumene "Radiant C" product at a CVS/pharmacy store.  Its point-of-purchase displays do not say "LUMENE VITAMIN+ RADIANT C-ENERGY" or "VITAMIN+" or "RADIANT-C ENERGY".  They say "Radiant C" in large type, all by itself at the top of the display in the most prominent part of the display.  That is the exact trademark that has been registered by Herbalife.

## II.

## LEGAL BRIEF

**A.**     **Summary Of Herbalife's Claims**

Claim 1:     Herbalife alleges that Lumene infringed its registered RADIANT C® trademarks, in violation of 15 U.S.C. § 1114.

Claim 2:     Herbalife alleges that Lumene engaged in unfair competition in violation of 15 U.S.C. § 1125(a).

Claim 3:     Herbalife alleges that Lumene infringed its registered RADIANT C®, trademarks, in violation of Cal. Bus. & Profs. Code § 14245(a).[1]

Claim 4:     Herbalife alleges that Lumene has engaged in unfair competition and false advertising in violation of Cal. Bus. & Profs. Code §§ 17200, 17500.

Claim 5:     Herbalife alleges that Lumene has engaged in common law trademark infringement and unfair competition.

---

[1] Herbalife pled this as a claim for violation of Cal. Bus. & Profs. Code § 14335, which was repealed after Herbalife filed this lawsuit and replaced with Bus. & Profs. Code § 14245.  Thus, Herbalife treats this claim as one for violation of § 14245.

**B.**     **Elements Required To Establish Herbalife's Claims**

    **1.**     **Trademark Infringement, 15 U.S.C. § 1114.**

To succeed on its claim for trademark infringement, Herbalife must prove:

    1.     Herbalife's "RADIANT C" trademarks are valid and protectable marks;

    2.     Herbalife owns "RADIANT C" as a trademark; and

    3.     Lumene used "RADIANT C", a mark similar to Herbalife's registered "RADIANT C" marks, without Herbalife's consent in a manner that is likely to cause confusion among ordinary purchasers as to the source of the goods. *See* Ninth Circuit Model Civil Jury Instructions No. 15.5

    **2.**     **Unfair Competition, 15 U.S.C. § 1125(a).**

The substantive elements of Herbalife's unfair competition claims under 15 U.S.C. § 1125(a) are the same as its trademark infringement claim under § 1114. *See Glow Indus., Inc. v. Lopez*, 252 F. Supp. 2d 962, 975 (C.D. Cal. 2002) ("The standard for Lanham Act unfair competition is the same as that for Lanham Act trademark infringement . . . ."); *Brookfield Communications, Inc. v. West Coast Entertainment Corp.*, 174 F.3d 1036, 1045 (9th Cir. 1999) (stating that both trademark infringement and unfair competition under the Lanham Act require establishing that defendant is using a mark confusingly similar to a valid, protectable trademark of plaintiff).

    **3.**     **Trademark Infringement, Cal. Bus. & Profs. Code § Code § 14245(a).**

The substantive elements of Herbalife's state law trademark infringement claim are the same as its federal trademark infringement claim. *See Cowles Magazines & Broad., Inc. v. Elysium, Inc.*, 255 Cal.App.2d 731, 733 (1967); California Forms of Jury Instructions MB 3300A.60.

**4.** **Unfair Competition And False Advertising, Cal. Bus. & Profs. Code §§ 17200, 17500**

     **a.** **§ 17200**

To succeed on its claim for violation of Cal. Bus. & Profs. Code § 17200, Herbalife must prove that:

Lumene engaged in an unlawful, unfair or fraudulent business act or practice by:

     1.     Infringing Herbalife's RADIANT C® trademark in violation of 15 U.S.C. § 1114(a);

     2.     Engaging in unfair competition in violation of 15 U.S.C. § 1125(a);

     3.     Infringing Herbalife's RADIANT C® trademark in violation of CALIFORNIA BUSINESS & PROFESSIONS CODE § 14245;

     4.     Violating California Business & Professions Code § 17500; or

     5.     Engaging in common law trademark infringement or unfair competition in violation of California law.

*See Academy of Motion Picture Arts and Sciences v. Creative House Promotions*, Inc., 944 F.2d 1446, 1457 (9th Cir. 1991); CALIFORNIA BUSINESS & PROFESSIONS CODE § 17200.

     **b.** **§ 17500**

To succeed on its claim for violation of Cal. Bus. & Profs. Code § 17500, Herbalife must prove that:

     1.     Lumene made or disseminated to the public untrue or misleading statements by using a mark similar to Herbalife's "RADIANT C" trademark; and

     2.     Members of the public are likely to be deceived by Lumene's statements.

*See McCann v. Lucky Money, Inc.*, 129 Cal.App.4th 1382, 1388 (2005).

**5.** **Common Law Trademark Infringement And Unfair Competition**

The elements of common law trademark infringement and common law unfair competition are the same as those of trademark infringement under 15 U.S.C. § 1114.  *Resource Lenders, Inc. v. Source Solutions, Inc.*, 404 F. Supp. 2d 1232, 1239 (E.D. Cal. 2005).  *See also Mallard Creek Industries, Inc. v. Morgan*, 56 Cal. App. 4th 426, 438, 65 Cal. Rptr. 2d 461, 469 (1997) (*quoting Academy of Motion Picture Arts and Sciences v. Creative House Promotions, Inc.*, 944 F.2d 1446, 1457 (9th Cir. 1991)).

**C.** **Brief Description Of Key Evidence In Support Of Each Claim**

**1.** **Trademark Infringement, 15 U.S.C. § 1114**

Herbalife has become well known throughout the United States and elsewhere as a source of high quality skin care products, including its RADIANT C® skin care line, that it markets to men and women from 25 to 45 years old.  Herbalife's RADIANT C® skin care line (RADIANT C® Daily Facial Scrub Cleanser, RADIANT C® Face Quencher, RADIANT C® Body Lotion SPF 15, RADIANT C® Daily Skin Booster) is marketed under the trademark RADIANT C® and utilizes an orange color scheme in its product packaging and related marketing materials.

Herbalife has continuously and extensively used its RADIANT C® trademarks in commerce in the United States in connection with skin care products since at least September 18, 2000.  Herbalife own the Herbalife RADIANT C® marks, registered by the USPTO, and has used them since September 18, 2000.

Herbalife has spent and continues to spend substantial sums of money, time, and effort to develop, advertise, and promote its RADIANT C® skin care products.  Herbalife's RADIANT C® skin care products are promoted and sold extensively through (1) authorized independent distributors utilizing both direct marketing and retail establishments such as beauty salons, (2) the Internet at www.herbalifeshopping.com and independent distributor websites, and (3) fairs, organized consumer events, and other Herbalife events where consumers are

1  presented with the products.  Herbalife has sold millions of units in the United States

2  and internationally.

3          As a result of these sales and the promotional efforts associated with

4  them, Herbalife's RADIANT C® skin care products have become known as

5  originating from and authorized by Herbalife.  Herbalife has not authorized defendant

6  Lumene to use Herbalife's RADIANT C® trademarks.

7          Lumene designs, markets, manufactures, sells, and distributes cosmetics

8  and personal care products through resellers and retail establishments in the United

9  States.  Lumene has used Herbalife's RADIANT C® trademark to sell at least five

10  skincare products in the United States without Herbalife's permission:  (1) "**Radiant**

11  **C** Beauty Drops", (2) "**Radiant C**-Energy Age-Defying Intensive Care", (3)

12  "**Radiant C**-Energy Eye Serum", (4) "**Radiant C**-Energy 5 Min. Mask", and (5)

13  "**Radiant C**-Energy Age-Defying Day Cream SPF 15."  Like Herbalife, Lumene, too,

14  uses an orange color scheme on its competing skin care products and related

15  promotional materials.

16          Lumene has widely distributed and marketed its skin care products

17  bearing the Herbalife RADIANT C® Marks in the United States.  Lumene's products

18  bearing the Herbalife RADIANT C® Marks have been sold at CVS/pharmacy stores

19  across the United States, through CVS's website at www.cvs.com, and at Target

20  stores.  Lumene has also engaged in extensive promotion of its "RADIANT C"

21  products in the United States, particularly with respect to its "RADIANT C" beauty

22  drops, of which it distributed 500,000 samples and for which it held launch parties

23  throughout the country.  Moreover, by Lumene's own admission, Lumene's "Radiant

24  C-Energy Age-Defying Intensive Care" cream is among its best-selling products in

25  the United States.

26       **2.**    <u>**Unfair Competition, 15 U.S.C. § 1125(a).**</u>

27          As the elements of Herbalife's unfair competition claim are identical to

28  the elements of its federal trademark infringement claim, the evidence that Herbalife

-9-

1  will use to support this claim is identical to the evidence that it will use to support its

2  claim for trademark infringement in violation of 14 U.S.C. § 1114(a).

3       **3.      Trademark Infringement, Cal. Bus. & Profs. Code § Code**

4             **§ 14245(a).**

5             As the elements of Herbalife's trademark infringement claim under

6  California law are identical to the elements of its federal trademark infringement

7  claim, the evidence that Herbalife will use to support this claim is identical to the

8  evidence that it will use to support its claim for trademark infringement in violation of

9  14 U.S.C. § 1114(a).

10      **4.      Unfair Competition And False Advertising, Cal. Bus. & Profs. Code**

11            **§§ 17200, 17500**

12            As the elements of Herbalife's false advertising and unfair competition

13 claim under California law are nearly identical to the elements of its federal trademark

14 infringement claim, the evidence that Herbalife will use to support this claim is

15 identical to the evidence that it will use to support its claim for trademark

16 infringement in violation of 14 U.S.C. § 1114(a).

17      **5.      Common Law Trademark Infringement And Unfair Competition**

18            As the elements of Herbalife's common law trademark and unfair

19 competition claim are identical to the elements of its federals trademark infringement

20 claim, the evidence that Herbalife will use to support this claim is identical to the

21 evidence that it will use to support its claim for trademark infringement in violation of

22 14 U.S.C. § 1114(a).

23 **D.    Summary Of Affirmative Defenses**

24            First Affirmative Defense:              Lumene claims that Herbalife's

25                                                   causes of action are barred by

26                                                   waiver, estoppel, acquiescence, or

27                                                   laches.

28

-10-

Second Affirmative Defense:        Lumene claims that Herbalife's causes of action are barred because its use of Herbalife's marks is a fair use.

**E.    Elements Required To Establish Lumene's Defenses**

    **1.    Waiver, Estoppel, Acquiescence, Or Laches**

        **a.    Waiver**

To succeed on its affirmative defense of waiver, Lumene must show that:

1.    Herbalife intentionally relinquished a right, namely its right to enforce its RADIANT C$^®$ trademarks;

2.    Herbalife had knowledge of the existing right that it relinquished; and

3.    Herbalife had sufficient awareness of the relevant circumstances and likely consequences when it relinquished the right.

*Roberts v. Superior Court*, 9 Cal. 3d 330, 343 (1973); *McDermott v. Superior Court*, 6 Cal. 3d 693, 698 n.3 (1972). *See also* CAL. CIV. CODE § 3513; California Civil Jury Instructions § 336.

        **b.    Estoppel**

To succeed on its affirmative defense of estoppel, Lumene must show that:

1.    Herbalife knew of Lumene's use of its RADIANT C$^®$ trademarks;

2.    Herbalife engaged in conduct suggesting that Lumene's use of its RADIANT C$^®$ trademarks was permitted, and intended that its conduct be acted upon;

3.    Lumene was ignorant of the true state of facts, namely that Herbalife did not grant it permission to use Herbalife's trademarks; and

4.    Lumene relied on Herbalife's conduct to its injury.

*See DRG/Beverly Hills, Ltd. v. Chopstix Dim Sum Cafe & Takeout III, Ltd.*, 30 Cal. App. 4th 54, 59-60 (1994).  *See also* CAL . EVID. CODE § 623.

**c.** **Acquiescence**

To succeed on its affirmative defense of acquiescence, Lumene must show that:

Herbalife acted in a manner consistent with consenting to and approving the acts and omissions about which Herbalife now complains, namely Lumene's use of Herbalife's RADIANT C® trademarks.

*See* CAL. CIV. CODE § 3516; *Griffin v. Beresa, Inc.*, 143 Cal. App. 2d 299, 301 (1956).

**d.** **Laches**

To succeed on its affirmative defense of laches, Lumene must show that:

1.    Herbalife unreasonably delayed in bringing this lawsuit;

2.    Either acquiescence in the act about which Herbalife complains or prejudice to Lumene resulted from the sdelay.

*Miller v. Eisenhower Medical Center*, 27 Cal. 3d 614, 624 (1980); *Conti v. Board of Civil Service Comm'rs*, 1 Cal. 3d 351, 359 (1969).

**2.** **Fair Use**

To prove its fair use defense, Lumene must show that it:

1.    Used Herbalife's RADIANT C® marks other than as a trademark;

2.    Used Herbalife's RADIANT C® marks fairly and in good faith; and

3.    Used Herbalife's RADIANT C® marks only to describe Lumene's goods or services.

*See* Ninth Circuit Model Civil Jury Instruction No. 15.22.

**F.** **Statement Of Evidence In Opposition To Each Affirmative Defense**

**1.** **Waiver, Estoppel, Acquiescence, Or Laches**

**a.** **Waiver**

There is no evidence whatsoever to suggest that Herbalife intentionally relinquished any right to enforce its RADIANT C® trademarks.  To the contrary,

-12-

1  Herbalife has consistently enforced its rights in its RADIANT C® trademarks.  Thus,

2  Lumene cannot succeed on its affirmative defense of waiver.

3            **b.**    **Estoppel**

4          There is no evidence whatsoever to support Lumene's affirmative

5  defense of estoppel.  Herbalife did nothing to suggest to Lumene that it use of

6  Herbalife's RADIANT C® trademarks was permissible.  In fact, there was no pre-

7  litigation conduct between the two companies from which one could even argue that

8  Herbalife permitted Lumene to use its RADIANT C® trademark.  Rather, in August

9  2007, a mere *three months* after it first discovered Lumene's use of its RADIANT C®

10 trademarks in May 2007, Herbalife filed this lawsuit.  Thus, Lumene cannot succeed

11 on its affirmative defense of estoppel.

12           **c.**    **Acquiescence**

13         There is no evidence whatsoever to support Lumene's affirmative

14 defense of acquiescence.  Herbalife never acted in any manner that could possibly

15 have suggested to Lumene that it consented to Lumene's use of its RADIANT C®

16 trademarks.  Rather, in August 2007, a mere *three months* after it first discovered

17 Lumene's use of its RADIANT C® trademarks in May 2007, Herbalife filed this

18 lawsuit.  Thus, Lumene cannot succeed on its affirmative defense of acquiescence.

19           **d.**    **Laches**

20         There is no evidence whatsoever to support Lumene's affirmative

21 defense of laches.  Herbalife did not delay in filing this lawsuit.  Rather, as noted

22 repeatedly above, Herbalife filed this suit a mere three months after it initially learned

23 about Lumene's use of its RADIANT C® trademarks in May 2007.  There is no

24 evidence to suggest that Herbalife knew about Lumene's use of its RADIANT C®

25 trademarks prior to May 2007.[2]  Moreover, Herbalife filed this suit well within the

26 _____

27 [2] It is not surprising that Herbalife did not learn of Lumene's use of its RADIANT C® trademarks until May 2007.  Lumene's RADIANT C products are but five (5) of over

28 300 Lumene products for sale in the United States, and Lumene's products are

1   limitations period, which weighs heavily against Lumene's laches defense.  Thus,

2   Lumene cannot succeed on its affirmative defense of laches.

3       **2.**   <u>**Fair Use**</u>

4           Lumene cannot succeed on its fair use defense because the evidence

5   shows that Lumene used "RADIANT C" in a trademark sense, not in a merely

6   descriptive sense.  The phrase "RADIANT C" is placed in the center of Lumene's

7   products and is highlighted in a bright orange bar, drawing one's eye directly to it.

8   Although there are other words on Lumene's packaging, such as "VITAMIN+", the

9   manner in which "RADIANT C" is highlighted suggests that Lumene intended

10  "RADIANT C" – and not any other words that appear on its products – to be its mark.

11          Moreover, Lumene's internal documents and public facing

12  advertisements show that it is using "RADIANT C" in the trademark sense, and not

13  merely as a descriptor or as part of a large product name.  For example, Lumene's

14  invoices for its "RADIANT C" products refer to those products as "RADIANT C," as

15  do its internal accounting reports.  Lumene's advertisements for its "RADIANT C"

16  line, as well as the coupons and advertisements it has displayed in CVS drug stores

17  referred to the products at "RADIANT C".  Thus, the evidence strongly shows that

18  Lumene uses "RADIANT C" in a trademark sense, and its fair use defense must fail

19  accordingly.

20  **G.**   <u>**Evidentiary Issues**</u>

21          As this time, Herbalife is not aware of any evidentiary issues.  This

22  however, is largely due to the fact that Lumene has neither provided Herbalife with its

23  exhibit list, nor has it provided Herbalife with any information about those witnesses,

24  if any, whose testimony it will seek to present via deposition testimony.  Herbalife

25  _____

26  sometimes housed in the cosmetics department, in which Herbalife does not compete,
    not the skin-care department.  Lumene's "RADIANT C" products do not appear to

27  have been among Lumene's most successful product lines, nor does it appear that they
    were heavily promoted prior to the spring 2007 launch of Lumene's "Radiant C

28  Beauty Drops."

1  thus reserves its right to assert evidentiary objections if and when Lumene provides it

2  with that information.

3  **H.** **Issues Of Law**

4         To establish trademark infringement, a plaintiff must demonstrate that:

5  (1) its mark is valid; and (2) the defendant's use of that mark is likely to cause

6  confusion in the marketplace.  *See Brookfield Communications*, 174 F.3d at 1046.

7       **1.** **Herbalife's Trademarks Are Valid**

8         Herbalife owns two federal trademark registrations for its RADIANT C®

9  trademarks:  (1) USPTO Registration Number 2,926,493, a design mark in

10  International Class 3 covering "skin care products, namely, facial creams, facial

11  cleansers, lotions, moisturizers and toners" and (2) USPTO Registration Number

12  3,100,479, a word mark in International Class 3 covering "creams, lotions, gels,

13  washes, masks, and milks for use on the face and body."  Such registrations provide

14  constructive notice to others of Herbalife's claim of exclusive ownership of each mark

15  that is the subject of the registrations (*see* 15 U.S.C. § 1072) and *prima facie* evidence

16  of the validity of the marks and Herbalife's exclusive right to use them in connection

17  with the goods specified in the registrations.  *See* 15 U.S.C. § 1057(b) ("A certificate

18  of registration of a mark upon the principal register provided by this chapter shall be

19  prima facie evidence of the validity of the registered mark and of the registration of

20  the mark, of the registrant's ownership of the mark, and of the registrant's exclusive

21  right to use the registered mark in commerce"); 15 U.S.C. § 1115(a) ("Registration . .

22  . on the principal register . . . shall be prima facie evidence of the validity of the

23  registered mark").

24         "Registered trademarks are presumed to be distinctive and should be

25  afforded the utmost protection."  *Americana Trading, Inc. v. Russ Berrie & Co.*, 966

26  F.2d 1284, 1287 (9th Cir. 1992) (*quoting Lois Sportswear, U.S.C. Inc. v. Levi Strauss

27  & Co.*, 799 F.2d 867, 871 (2d Cir. 1986)) (overturning summary judgment because

28  "the district court gave insufficient weight to the presumptive effect of [plaintiff's]

1  federal registration").  Consequently, Herbalife's federally registered trademarks are

2  presumed valid and distinctive and entitled to the utmost protection.

3  **2.**      **Lumene's Use Of "RADIANT C" Is Likely To Cause Consumer**

4  **Confusion.**

5  "The likelihood of confusion is the central element of trademark

6  infringement, and the issue can be recast as the determination of whether 'the

7  similarity of the marks is likely to confuse customers about the source of the

8  products.'"  *GoTo.com, Inc. v. The Walt Disney Co.*, 202 F.3d 1199, 1205 (9th Cir.

9  2000).  To determine whether a likelihood of confusion exists, a court should

10  consider:  (1) the similarity of the marks; (2) the relatedness of the two companies'

11  products; (3) the marketing channels used; (4) the strength of the plaintiff's mark; (5)

12  the defendant's intent in selecting the mark; (6) the evidence of actual confusion; (7)

13  the likelihood of expansion into other markets; and (8) the degree of care likely to be

14  exercised by purchasers.  *Goto.com*, 202 F.3d at 1205; *Brookfield*, 174 F.3d at 1053-

15  54; *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979).  "In assessing

16  the likelihood of confusion to the public, the standard used by the courts is the typical

17  buyer exercising ordinary caution . . . .  Although the wholly indifferent may be

18  excluded . . ., the standard includes the ignorant and the credulous." *Sleekcraft*, 599

19  F.2d at 353 (internal citations omitted).

20  A plaintiff, however, need not prove that each of these factors favors a

21  likelihood of confusion in order to prevail on the merits.  Indeed, the Ninth Circuit has

22  stated that the first three factors (the similarity of the marks, the relatedness of the two

23  companies' products, and the marketing channels used) are often the most vital in

24  determining likelihood of confusion.  *Goto.com*, 202 F.3d at 1205, 1207 (calling the

25  first three factors the "controlling troika in the *Sleekcraft* analysis" and the "trinity

26  [which] constitutes the most crucial body of the *Sleekcraft* analysis").  *See also*

27  *Brookfield*, 174 F.3d at 1057(finding that "many forms of consumer confusion are

28  likely to result" based on the first three factors.)  Based on the relevant *Sleekcraft*

factors, a strong likelihood of confusion exists between Herbalife's use of its RADIANT C® marks on skin care products and Lumene's use of the identical term "RADIANT C" on directly competing skin care products marketed to the same consumers through the same Internet channels of trade.

### a. The Parties' Marks Are Identical.

"Similarity of the marks has always been considered a critical question in the likelihood-of-confusion analysis." *GoTo.com*, 202 F.3d at 1205. Similarity of marks is determined by the "appearance, sound, and meaning of the marks when considered in their entirety." *Id*. at 1206. Similarities are weighed more heavily than differences. *See Official Airline Guides, Inc. v. Goss*, 6 F.3d 1385, 1392 (9th Cir. 1993), *citing Fruit of the Loom, Inc. v. Girouard*, 994 F.2d 1359, 1563-64 (9th Cir. 1993). These criteria are easily met when comparing Herbalife's registered RADIANT C® marks with Lumene's competing use of the term "RADIANT C".

The term "RADIANT C" as used by Lumene on its competing skin care products and related promotional materials is *identical* to Herbalife's use of its registered RADIANT C® word mark:

| HERBALIFE'S USES | LUMENE'S USES |
| --- | --- |
| **RADIANT C** Daily Facial Scrub Cleanser | "**Radiant C** Beauty Drops" |
| **RADIANT C** Face Quencher | "**RADIANT C**-ENERGY Age-Defying Intensive Care" |
| **RADIANT C** Body Lotion SPF 15 | "**RADIANT C**-ENERGY WITH SPF 15 Age-Defying Day Cream" |
| **RADIANT C** Daily Skin Booster | "**RADIANT C**-ENERGY 5 MIN. MASK" |
| | "**RADIANT C**-ENERGY EYE Intensive Renewing Eye Serum" |

Not only is the exact same phrase used, but both parties use the term "RADIANT C" at the beginning of their product names, both use the identical phrase on their products in association with an orange color scheme, thereby further causing a

likelihood of confusion between the competing uses, both are pronounced in exactly the same manner when spoken, both look identical (the word "RADIANT" followed by the letter "C"), and both have the same meaning (suggestive of the Vitamin C ingredient in their competing products).

This factor heavily favors Herbalife.  *See Brookfield*, 174 F.3d at 1056 ("In light of the virtual identity of marks, if they were used with identical products or services likelihood of confusion would follow as a matter of course."); *K-Swiss Inc. v. USA Aisiqi Shoes, Inc.*, 291 F. Supp. 2d 1116, 1123 (C.D. Cal. 2003), ("where marks are virtually identical, 'if they were used with identical products or services likelihood of confusion would follow as a matter of course.'" (quoting *Brookfield*, 174 F.3d at 1056)); *Discovery Comms., Inc. v. Animal Planet, Inc.*, 172 F. Supp. 2d 1282, 1289 (C.D. Cal. 2001) ("This factor weighs for Plaintiffs as the marks are identical."); *Nissan Motor Co., Ltd. v. Nissan Computer Corporation*, 89 F. Supp. 2d 1154 at 1163 ("The use of similar marks to promote similar products weighs heavily in favor of finding a likelihood of confusion.").

### (1)   Lumene's Is Using The Mark "RADIANT C"

Lumene has previously claimed that it is not using "RADIANT C" itself as a trademark, but rather is using "VITAMIN+ RADIANT-C" as its mark.  This claim is belied by what actually appears on Lumene's products.  Consider Lumene's most recent "RADIANT C" product, its beauty drops:



-18-

1

2

3   Lumene is simply not using a "VITAMIN+ RADIANT C" mark on this product.  One

4   could consider Lumene's mark to be "VITAMIN+ RADIANT C", and not simply

5   "RADIANT C", as Lumene's mark only by ignoring (1) the words "WITH ARCTIC

6   CLOUDBERRY," which appear between "VITAMIN+" and "RADIANT C"; (2) the

7   fact that only the phrase "Radiant C Beauty Drops" appears highlighted in a bright

8   orange bar across the packaging; (3) the fact that the phrase "Radiant C Beauty

9   Drops" appears in different font than "VITAMIN+" and "WITH ARCTIC

10  CLOUDBERRY"; (4) the fact that the phrase "Radiant C Beauty Drops" is

11  graphically isolated from the phrases "VITAMIN+" and "WITH ARCTIC

12  CLOUDBERRY", (5) the fact that a horizontal line separates the phrase

13  "VITAMIN+" from the phrase "WITH ARCTIC CLOUDBERRY"; and (6) most

14  importantly, the fact that Lumene highlights the phrase "RADIANT C" by centering it

15  and highlighting in a bright orange bar.

16          Moreover, Lumene's internal documents and public facing

17  advertisements show that "RADIANT C" is its intended product name.  Lumene's

18  invoices for its "RADIANT C" products refer to those products as "RADIANT C," as

19  do its internal accounting reports.  Lumene's advertisements for its "RADIANT C"

20  line, as well as the coupons and advertisements it has displayed in CVS drug stores,

21  referred to the products at "RADIANT C".  Thus, it is clear that Lumene is using a

22  "RADIANT C" mark, and not a "VITAMIN+ RADIANT C" mark.

23          **(2)   Lumene's Use Of It's House Mark Does Not Change**

24              **This Conclusion**

25          The fact that Lumene uses its house mark, LUMENE, with its

26  "RADIANT C" products does not detract from the fact that both Herbalife and

27  Lumene identically use "RADIANT C."  In fact, Lumene's use of its house mark with

28  Herbalife's trademark, RADIANT C[®] may actually *foster* consumer confusion by

-19-

1   leading consumers to believe that Lumene has entered into a partnership with

2   Herbalife.  *Americana Trading, Inc. v. Russ Berrie & Co.*, 966 F.2d 1284, 1288 (9th

3   Cir. 1992) (noting that defendant's use of plaintiff's trademark with its house mark

4   could cause reverse confusion).  *See also Int'l Kennel Club, Inc. v. Mighty Star, Inc.*,

5   846 F.2d  1079, 1088 (7th Cir. 1988) (noting that defendant's use of plaintiff's

6   trademark with its house mark could cause consumers to believe that plaintiff had

7   sanctioned or sponsored defendant's use of its mark); *A.T. Cross Co. v. Jonathan*

8   *Bradley Pens, Inc.*, 470 F.2d  689, 692 (2d Cir. 1972) ("Addition of the words 'By

9   Bradley' does not save the day; a purchaser could well think plaintiff had licensed

10  defendant as a second user and the addition is thus an aggravation, and not a

11  justification.");  4 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION 23:43

12  (4th Ed. 2006) ("a user cannot justify its confusing use of another's mark simply by

13  tacking on its own housemark or trade name.").

14          **b.    Lumene's "RADIANT C" Products Directly Compete With**

15          **Herbalife's Products.**

16          Directly competing goods are in the closest proximity under the

17  likelihood of confusion analysis.  *See Sleekcraft*, 599 F.2d at 348 ("When the goods

18  produced by the alleged infringer compete for sales with those of the trademark

19  owner, infringement usually will be found if the marks are sufficiently similar that

20  confusion can be expected.").  If goods directly compete, then confusion will usually

21  arise because "complementary products or services are particularly vulnerable to

22  confusion." *Id.*  The type of goods and services at issue in this case are identical,

23  greatly increasing the likelihood of consumer confusion.

24          Herbalife and Lumene both sell directly competing skin care products

25  under the term "RADIANT C".  The "RADIANT C" products of both parties are

26  intended to achieve and marketed to achieve identical skin care results.  The goods at

27  issue here are of the same type and are used for the same purposes.  Below is a

28  comparison of Herbalife's RADIANT C® skin care products with Lumene's directly

-20-

1  competing "RADIANT C" skin care products, quoting language used on the

2  packaging or promotional materials for each product.

| HERBALIFE'S RADIANT C® SKIN CARE PRODUCTS | LUMENE'S "RADIANT C" SKIN CARE PRODUCTS |
|---|---|
| **Radiant C**® Body Lotion SPF 15: "**Moisturize** skin and maximize **protection** from the sun with this **lightweight**, non-greasy, **vitamin C-based** lotion for **everyday moisture**." "**Protect skin from the sun** with SPF 15" "Guard against damage from **UVA/UVB** rays" | **Radiant C**-Energy With SPF 15: "The arctic cloudberry energy and liposome-**based vitamin C** in this **light** and refreshing **moisturizer** help regenerate your skin.  These precious action ingredients combined with **UVA/UVB protection** prevent pigmentation marks caused by the sun and delay the formation of wrinkles. Protecting your skin from daily stress is the best way to keep it smooth, radiant and bright.  Apply to clean skin **every morning**." |
| **Radiant C**® Face Quencher: "Spritz face **throughout the day** to revitalize skin with this cool **vitamin C** spray." "**Refresh tired-looking skin**" "Get **instant hydration and moisture**" | **Radiant C**-Energy Eye: "Precious ingredients (cloudberry and **Vitamin C**) help skin **fight the signs of aging** . . ..  Your skin will **instantly feel irresistibly renewed**.  Apply **morning and night or whenever needed**. |
| **Radiant C**® Daily Facial Scrub Cleanser: "Cleanse, **soften** and smooth dull tired skin with **vitamin C**, jojoba beads and citrus extracts." "Exfoliate and **revitalize** skin" "Prevent dull, **tired complexion**" "Maximize **antioxidant** skin protection" "As we age, **skin cell turnover slows** resulting in **dull looking skin**.  Vitamin C can held defend skin from free radical damage." " | **Radiant C**-Energy 5 Min. Mask: "A luxurious, velvety soft mask **brightens**, relaxes and **invigorates** your skin in just 5 minutes.  Lumene has created the first mask to combine the energy of wild Artic cloudberry and liposome-protected **Vitamin C**. Precious natural active ingredients – omega fatty acids and **antioxidants** – together with vitamins maintain the well-being of your skin in many ways:  Help your skin recover from the week's **fatigue**.  Give long-lasting hydration, radiant energy and **softness**.  **Promote skin renewal**." |

-21-

| HERBALIFE'S RADIANT C® SKIN CARE PRODUCTS | LUMENE'S "RADIANT C" SKIN CARE PRODUCTS |
|---|---|
| **Radiant C®** Daily Skin Booster:<br>"Harness the power of antioxidant **vitamin C** to seal in skin's **moisture** with this emollient-rich gel cream."<br>"This **light gel cream** held seal in skin's moisture, preventing dry skin."<br>"Minimize the appearance of **fine lines and wrinkles**"<br>"Dispense a small amount **on fingertip**, massage gently on **face and throat**. Apply in the morning **after cleansing and before your moisturizer**." | **Radiant C** Beauty Drops:<br>"Treat your skin to an **age defying** sensation!"<br>"**Age defence [*sic*]** for all skin types"<br>"Use over a 28 day period – one capsule a day.  Remove the tip of the capsule and squeeze the content **onto fingertips**. Apply on **cleansed fact and neck before day or night cream**."<br><br>**Radiant C**-Energy (Age-Defying Intensive Care):<br>"A pampering fresh, **light cream** that promotes skin renewal.  Lumene has created the **moisturizer** to combine the energy of wild arctic cloudberry and liposome-protected **vitamin C**.  Precious natural active ingredients . . . help skin fight the **first signs of aging** and provide it with vital energy and hydration for optimum radiance."<br>"Apply to **cleansed skin** morning and night." |

Because Lumene is selling competing skin care products bearing a "RADIANT C" mark that are for all purposes ***identical*** to those sold by Herbalife under its RADIANT C® marks, this factor heavily favors a finding of trademark infringement.  *Sleekcraft*, 599 F.2d at 350 (the more similar the goods in question, "the less similarity in the marks is requisite to a finding of likelihood of confusion"); *Brookfield*, 174 F.3d at 1056 ("In light of the virtual identity of marks, if they were used with identical products or services likelihood of confusion would follow as a matter of course."); *Discovery Comms.*, 172 F. Supp. 2d at 1289 ("Because Defendants use the identical mark on similar and closely related products and services, the 'likelihood of confusion would follow as a matter of course.'" (quoting *Brookfield*)); *Nissan Motor Co.*, 89 F. Supp. 2d at 1163 ("The use of similar marks to promote similar products weighs heavily in favor of finding a likelihood of confusion.").

1       **c.      Lumene And Herbalife Use The Same Marketing Channel To**

2       **Reach The Same Consumers.**

3       "Convergent marketing channels increase the likelihood of confusion."

4  *See Nutri/System, Inc. v. Con –Stan Indus., Inc.*, 809 F.2d 601, 606 (9th Cir. 1987).

5  Both Herbalife and Lumene offer only two channels for purchasing their "Radiant C"

6  skin care products—in the case of Herbalife, through the Internet and through

7  authorized independent distributors utilizing both direct marketing and retail

8  establishments such as beauty salons, and in the case of Lumene, through the Internet

9  and through an authorized independent retailer, CVS/pharmacies.  Herbalife's

10 RADIANT C® skin care products are available for purchase through the Internet, and

11 all five of Lumene's skin care products were at one point sold through the

12 CVS/pharmacy website, www.cvs.com. Herbalife markets its RADIANT C® skin care

13 products through its website, www.herbalife.com. Lumene markets its "RADIANT

14 C" skin care products through its websites, www.lumene.com and

15 www.lumenegroup.com.  The fact that both parties rely heavily on the Internet for

16 sales and promotion of their respective "RADIANT C" products greatly increases the

17 likelihood of consumer confusion.

18       Moreover, because of the identity of the two lines, both parties are

19 targeting the same consumers.  "[T]he Web, as a marketing channel, is particularly

20 susceptible to a likelihood of confusion since, as it did in this case, it allows for

21 competing marks to be encountered at the same time."  *GoTo.com*, 202 F.3d at 1207.

22 For this reason, "courts have consistently recognized [concurrent use of the Internet as

23 marketing channel] as exacerbating the likelihood of confusion." *Brookfield*, 174

24 F.3d at 1057.  *See also Nissan*, 89 F. Supp. 2d at 1164 ("Both parties also use the

25 Internet as a marketing and advertising channel.  This factor further exacerbates the

26 likelihood of confusion, and therefore weighs in the plaintiff's favor.").  As the Ninth

27 Circuit explained in *Brookfield*:  "In the Internet context, in particular, entering a

28 website takes little effort-usually one click from a linked site or a search engine's list."

-23-

174 F.3d at 1057.  And "[t]he ever-growing number of tentacled conglomerates may force us to conclude that even one hundred and one products could all be sponsored by a single consortium."  *GoTo.com*, 202 F.3d at 1207.

The increased likelihood of confusion from such concurrent use is exemplified in this case.  Indeed, links to both Herbalife's RADIANT C® skin care products and Lumene's "RADIANT C" skin care products at one point appeared in the *first ten* results of an Internet search for "Radiant C" using the search engine www.google.com.  And because of the limited availability of physical sales of these skin care products, it is more likely that consumers will turn to the Internet for their purchases.  Moreover, both parties use a similar layout and color scheme for promoting their respective "RADIANT C" skin care products on their websites, including a picture and description of the product and its uses under the product name in blue font.  This considerable overlap of marketing channels and format, combined with the fact that Lumene is using a brand identical to the Herbalife RADIANT C® Marks on directly competing products provides ample grounds to conclude that consumers will likely be confused.  *See GoTo.com*, 202 F.3d at 1207 ("In determining whether there is a likelihood of confusion, we rely heavily on the fact that the marks are similar, that [the parties] offer very similar services, and that they both use the web as their marketing channel.  This trinity constitutes the most crucial body of the Sleekcraft analysis, and, in this case, it suggests that confusion is indeed likely."); *Brookfield*, 174 F.3d at 1057 ("Given the virtual identify of [the marks], the relatedness of the products and services accompanied by those marks, and the companies' simultaneous use of the Web as a marketing and advertising tool, many forms of consumer confusion are likely to result.").s

**d.      The Herbalife RADIANT C® Marks Are Strong.**

Herbalife's federal registrations for RADIANT C® confer a presumption that the marks are distinctive.  *See Avery Dennison Corp. v. Sumpton*, 189 F.3d 868, 876 (9th Cir. 1999).  Moreover, inherently distinctive marks such as Herbalife's

1    RADIANT C® marks receive the "widest ambit of protection from infringing uses."

2    *See Sleekcraft*, 599 F.2d at 349.  The strength of Herbalife's RADIANT C® marks is

3    further evidenced by Herbalife's extensive use of these marks since 2000 in

4    advertising and on over 1.2 Million units ($17.4 million) of RADIANT C® products

5    in the United States, which has created a secondary meaning in the minds of

6    consumers, associated exclusively with Herbalife.  Because Herbalife's composite

7    RADIANT C® marks are  presumptively valid and strong marks, and have developed

8    strong secondary meaning, this factor also heavily favors a finding of trademark

9    infringement.[3]

10                     **(1)     The Radiant C® Trademark Is Suggestive.**

11           "There are five categories of trademarks: (1) generic; (2) descriptive; (3)

12   suggestive; (4) arbitrary; and (5) fanciful."  *Cab Co. v. Yellow Cab/Elk Grove*, 419

13   F.3d 925, 927 (9th Cir. 2005). Generic marks "give the general name of the product"

14   or "embrace an entire class of products."  *Id*.  Descriptive marks "define a particular

15   characteristic of the product in a way that does not require any exercise of the

16   imagination."  *Id*.   Generic marks can never received trademark protection, and

17   descriptive marks can receive trademark protection only upon a showing of secondary

18   meaning.  The latter three categories, by contrast, are "are deemed inherently

19   ───────────────
     [3] Lumene has argued at one point that Herbalife's RADIANT C® mark is weak

20   because others use "RADIANT" and "C" in the marketplace.  This argument,
     however, is meritlesss because Herbalife's mark is a *composite* mark—RADIANT

21   C®—and it must be viewed as such.  Lumene cannot dissect it into its component
     parts.  *See, e.g., GoTo.com v. Walt Disney, Co.*, 202 F.3d 1199, 1207 (9th Cir. 2000)

22   ("GoTo's logo may appear to be weakened by the fact that the term 'Go' and green
     'Go' circles are certainly common sights on the Internet, *but it is the mark in its*

23   *entirety that must be considered*, not simply individual elements of that mark."
     (emphasis added)); *Rodeo Collection, Ltd.*, 812 F.2d at 1218 ("West Seventh focuses

24   on part of Rodeo's mark [RODEO COLLECTION], 'collection,' . . . we must consider
     the specific associations that the *composite mark* triggers in the minds of consumes

25   when it is used to identify shopping center services." (emphasis added)); *AutoZone,*
     *Inc. v. Tandy Corp.*, 373 F.3d 786, 794-795 (6th Cir. 2004) (the mark "AUTOZONE"

26   was not weakened by third-party use of the word "ZONE" because courts must
     consider composite marks in their complete form instead of in their component parts).

27   The same is true of Lumene's argument that RADIANT C® is descriptive of the
     ingredients in Herablife's products:  the ingredient is *vitamin C*, not simply "C".

28

                                            -25-

distinctive" any are entitled to trademark protection without a showing of secondary meaning.  *Id*.

    To differentiate between descriptive and suggestive marks, courts ask "how immediate and direct is the thought process from the mark to the particular product."  *Sleekcraft Boats*, 599 F.2d at 349 (9th Cir. 1979).  *See also Rodeo Collection, Ltd. v. West Seventh*, 812 F.2d 1215, 1218 (9th Cir. 1987) ("If a consumer must use more than a small amount of imagination to make the association, the mark is suggestive and not descriptive.").  Courts also consider "whether granting the trademark owner a limited monopoly would in fact inhibit legitimate use of the mark by other sellers."  *AMF, Inc.*, 599 F.2d at 349.

    Here, Herbalife's RADIANT C® marks are clearly suggestive.  A consumer must use much more than a modicum of imagination to determine from the composite phrase "RADIANT C" what Herbalife is selling.  This composite phrase is a play on words.  Pronounced quickly and together, the two elements in Herbalife's composite RADIANT C® sound like "radiancy".  And neither element alone tells consumers what Herbalife's product is.  Consumers must use their imaginations to determine what Herbalife is selling.  It is not obvious seeing or speaking the composite phrase "RADIANT C" that Herbalife is marketing a skin care product.[4] That name could also invoke furniture polish, light bulbs, or any number of other things, requiring the consumer to use his or her imagination.  *See*, *e.g.*, *Rodeo Collection*, 812 F.2d at 1219 (noting that "the mark BRILLIANT may be descriptive on diamonds, suggestive on furniture polish, and arbitrary on canned applesauce"); *Golden Door, Inc. v. Odisho*, 437 F. Supp. 956 (N.D. cal. 1977) *disapproved on other grounds Japan Telecom, Inc. v. Japan Telecom Am., Inc.*, 287 F.3d 866, 875-76 (9th Cir. 2002) ("Plaintiff's name falls into the category of suggestive names since it

---

[4] The same is true of the ingredients of Herbalife's RADIANT C® products.  While RADIANT C® may *suggest* vitamin C, it surely does not *describe* it.

requires some imagination to connect the words 'golden door' to the beneficial effects of plaintiff's service, and the name does not merely describe the quality of goods and services provided.").  Moreover, Herbalife does not claim any interest in "RADIANT" alone or "C" alone, and its usage does not monopolize the market for the word "RADIANT" or the letter "C".  Herbalife's competitors would have, and indeed have, no difficulty marketing a competing skin-care product without using Herbalife's composite mark, RADIANT C®.  Thus, Herbalife's RADIANT C® is suggestive and strong.

### e.      There Is Evidence Of Willful Intent.

Although bad intent is not required, where the alleged infringer knowingly adopts a mark similar to another's, there is a presumption that the public will be deceived.  *See Sleekcraft*, 599 F.2d at 354.  Here, Lumene has not provided a shred of evidence to suggest that it acted in good faith in adopting "RADIANT C" for its use.   In 2005, when Lumene claims to have decided to use "RADIANT C", Herbalife had already applied to register RADIANT C as a Community Trademark in the European Union, which includes Finland, home to Lumene's parent company.  Herbalife was also making extensive use of its RADIANT C® marks in the United States and abroad, and had applied to register its stylized RADIANT C mark with the United States Patent and Trademark Office in 2000, and its RADIANT C word mark in April 2005.  A simple Internet search would have revealed Herbalife's use.  Good faith would have required Lumene to have looked in its own backyard, or done a simple search of the United States marketplace before launching its RADIANT C products in 6,200 CVS pharmacies and 1,500 Target stores.  Lumene's failure to produce any evidence of such a search smacks of bad faith.  Thus, factor favors a finding of a likelihood of confusion.

### f.      Lack Of Evidence Of Actual Confusion Is Not Dispositive.

A plaintiff need not prove *actual confusion* to prove *likelihood of confusion*. *Eclipse Associates Ltd. v. Data General Corp.*, 894 F.2d 1114, 1999 (9th Cir. 1990)

1  ("proof of actual confusion is only one factor to be weighed in determining likelihood

2  of confusion").  *See also Sleekcraft*, 599 F.2d at 353 ("the failure to prove instances of

3  actual confusion is not dispositive.").  Thus, the lack of evidence of actual confusion

4  is neutral, and this factor favors neither Herbalife nor Lumene.

5          **g.     The Likelihood Of Expansion Into Other Markets Factor Is**

6                  **Not Necessary At This Point Because The Parties' Current**

7                  **Goods Already Directly Compete.**

8          The likelihood of expansion into other markets factor is not necessary

9  where the parties' goods already directly compete, as is the case here.  *Brookfield*, 174

10  F.3d at 1060 ("The likelihood of expansion in product lines factor is relatively

11  unimportant where two companies already compete to a significant extent.").  Thus,

12  this factor is neutral at this point.

13          **h.     Purchasers Will Likely Exercise A Low Degree Of Care.**

14          "When dealing with inexpensive products, consumers are likely to

15  exercise less care, thus making confusion more likely."  *Discovery Comms.*, 172 F.

16  Supp. 2d at 1290.  Herbalife and Lumene both sell inexpensive, directly competing

17  "RADIANT C" products, and compete in a market full of low cost alternatives.

18  Herbalife's RADIANT C® skin care line sells in the range of $5.00 to $22.50,

19  depending on the specific product.  Lumene's "RADIANT C" skin care products all

20  sell for around $15.99-$17.99 list price, and are even further discounted by CVS and

21  Target.  Unlike expensive electronics, consumers are not likely to exercise great care

22  or spend much time when purchasing any of these inexpensive skincare products, thus

23  increasing the likelihood of confusion.  *See*, *e.g.*, *Pignons S. A. de Mecanique de*

24  *Precision v. Polaroid Corp.*, 657 F.2d 482 (1st Cir. 1981) (cameras).

25          The fact that the parties sell skin care products will not cause consumers

26  to act more cautiously.  When products are purchased at mass-market retailers like

27  CVS and Target, consumers are faced with hundreds of competing products.  As

28  courts have noted in the context of supermarkets, which are quite similar to the big-

-28-

box retailers in which Lumene sells its products, consumers are so inundated with images and products that they undergo "an experience not unlike that of hypnosis," purchasing whatever they happen to pull off the shelf.  *Pickle-Rite Co. v. Chicago Pickle Co.*, 171 F. Supp. 671, 676 (N.D. Ill. 1959).  Moreover, there is no indication that consumers exercise more care when dealing with products that they put on or into their bodies.  *See*, *e.g.*, *Mexican Food Specialties v. Festida Foods, Ltd.*, 953 F. Supp. 846, 852 (E.D. Mich. 1996) (consumers unlikely to exercise a high degree of care when purchasing tortillas);  *Pickle-Rite Co.*, 171 F. Supp. at 676 (consumers are unlikely to exercise a high degree of care when purchasing pickles).

Rather, Consumers, faced with so many choices, are not likely to exercise any significant degree of care, and appear to trust the retailer's stocking a particular product as an assurance of its quality.  In fact, one court has held in a case involving tampons, arguably one of the most personal products on the market, that "[t]he low price point at which tampons are sold supports an inference that buyers will exercise relatively little care when choosing products from the shelf."  *Playtex Prods., Inc. v. First Quality Hygienic*, 965 F. Supp. 339, 344 (E.D.N.Y. 1996).  If women buy tampons without care, surely they will buy skin-care products without much thought.

### III.

### BIFURCATION OF ISSUES

At this time, Herbalife does not request that the Court bifurcate any issues for trial.

### IV.

### JURY TRIAL

Herbalife's causes of action for trademark infringement under federal and California law and its cause of action for violation of the federal unfair competition statute are triable to a jury as a matter of right.  *See Dairy Queen v. Wood*, 369 U.S. 469 (1962)(entitlement to jury trial for Lanham Act claim claim). Herbalife made a jury demand in its initial complaint in this matter.

1

## V.

## **ATTORNEYS' FEES**

Herbalife intends to seek its attorneys' fees pursuant to 15 U.S.C. §1117(a).

## VI.

## **ABANDONMENT OF ISSUES**

Herbalife does not abandon any issues.

Dated:  April 20, 2009          SHEPPARD MULLIN RICHTER & HAMPTON LLP



By    /s/ Kent R. Raygor
                                   KENT R. RAYGOR

                                  Attorneys for Plaintiff
                          HERBALIFE INTERNATIONAL, INC.

W02-WEST:1VEA2\401499295.1